IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **SYNTHIA G. ROSS, et al.,** | ) | |
| On Behalf of Themselves and | ) | |
| All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case no.: 1:09-CV-5695 |
| | ) | |
| **RBS CITIZENS, N.A.,** | ) | |
| **d/b/a Charter One** | ) | |
| -and- | ) | |
| **CITIZENS FINANCIAL GROUP, INC.** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
UNDER THE ILLINOIS MINIMUM WAGE LAW**

**COME NOW** the Plaintiffs, on behalf of themselves and all others similarly situated, and set forth the following Memorandum in Support of *Plaintiffs' Motion for Class Certification Under the Illinois Minimum Wage Law* regarding Counts II and IV of the First Amended Complaint.

## I.   INTRODUCTION

Plaintiffs Synthia Ross and James Kapsa bring claims against defendants RBS Citizens, N.A. (d/b/a Charter One) and Citizens Financial Group, Inc. (hereafter collectively referred to as "Charter One"), under the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq*., for their failure to pay overtime wages.  The Plaintiffs allege that Charter One failed to pay nonexempt branch employees overtime for "off the clock" work at their locations throughout Illinois.  Also, the Plaintiff Kapsa alleges that Charter One misclassified its Illinois assistant branch managers, and in turn, failed to pay any overtime compensation to these employees for

work performed in excess of forty hours per week. The Plaintiffs seek Fed.R.Civ.P. 23 class certification for the following two classes of employees under the IMWL: (i) all nonexempt branch employees ("Retail Branch Employees") employed at Charter One's Illinois branches from October 23, 2006 to the present; and (ii) all assistant branch managers employed at Charter One's Illinois branches from October 23, 2006 to the present.

Defendant Charter One is primarily engaged in the business of consumer retail banking with individual bank branches located in the states of Illinois, Michigan, and Ohio. Charter One employees nonexempt tellers,bankers, and other nonexempt employees at approximately one hundred and two (102) branches in the state of Illinois. *See*, *Plaintiffs' Motion for Class Certification Under Illinois Minimum Wage Law*, Statement of Facts, ¶ 1 (hereafter "SOF ¶ ___"). Plaintiffs Ross and Kapsa worked in Charter One Illinois branch locations in the positions of teller and personal banker respectively and allege that Charter One failed to pay the class of Retail Branch Employees overtime for off the clock work. Since the commencement of this action, another twenty-four (24) Illinois hourly employees have provided testimony in support of these claims. Additionally, Plaintiff Kapsa alleges that Charter One misclassified all Illinois assistant branch managers as salary exempt under the IMWL. Three additional assistant branch managers and a branch manager have testified in support of this misclassification. Charter One admits that it classifies these employees as nonexempt and does not pay them any overtime.

Like most wage and hour class claims, the Plaintiffs have easily established a common Charter One policy at issue among the members of both classes of employees. The nonexempt employees are all subject to Charter One's policy of failing to pay overtime for work performed off the clock. The assistant branch managers are certainly all subject to Charter One's admitted

policy of not paying them any overtime. As discussed in more detail below, the Plaintiffs have met the requirements under Fed.R.Civ.P. 23(a) and 23(b)(3) to warrant this Court certifying both classes of employees. Indeed, this case is substantially similar to another "off the clock" IMWL case that this Court previously certified under Rule 23. Ladegaard v. Hard Rock Concrete Cutters, Inc., 2000 WL 1774091 (N.D.Ill. 2000) (Lefkow, J.).

## II.     THE PLAINTIFFS HAVE MET THE RULE 23 REQUIREMENTS

**A.     Standard For Class Certification:**

"The Federal Rules of Civil Procedure provide the federal district court with broad discretion to determine whether certification of a class action is appropriate." Keele v. Wexler, 149 F.3d 589, 592 (7th Cir. 1998). "Under the Rules, a determination of class certification requires a two-step analysis." Ladegaard v. Hard Rock Concrete Cutters, Inc., 2000 WL 1774091, at *1 (N.D.Ill. 2000) (Lefkow, J.). First, the named class representatives must satisfy all four elements of Fed.R.Civ.P. 23(a): (1) numerosity: the class must be "so numerous that joinder of all members is impracticable"; (2) commonality: there are questions of law or fact common to the class"; (3) typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation: "the representative parties will fairly and adequately protect the interests of the class." Second, an action must be maintainable under at least one of the three provisions of Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3) which requires "that the questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to the available methods for the fair and efficient adjudication of the controversy."

"When evaluating a motion for class certification, the court accepts as true the allegations made in support of certification, and does not examine the merits of the case." Ladegaard, 2000

3

WL 17774091, at *2. Although it is plaintiffs' burden to satisfy the elements of Rule 23(a), that burden is not onerous, since at this stage plaintiffs need not demonstrate a likelihood that they will prevail. *See*, *e.g.*, Colbert, et al. v. Blagojevich, 2008 WL 4442597, at *6 (N.D.Ill. 2000) (Lefkow, J.) ("Absent clear proof that plaintiffs' claims are without merit, the court, in ruling on this motion for class certification, declines to 'infer' that plaintiffs will ultimately be unsuccessful.").

**B.      Plaintiffs Meet the Requirements of Rule 23(a):**

> ***1.      Rule 23(a)(1): The Class is so Numerous that it would be Impracticable to Join Each Class Member as a Named Plaintiff.***

To determine whether joinder is impracticable, courts must consider the circumstances unique to each case. Swanson v. Am. Consumer Indus., 415 F.2d 1326, 1333 (7th Cir. 1969). The two classes of nonexempt employees and assistant branch managers are in the thousands and hundreds respectively. Since these classes are so large, joinder is not practicable. Ladegaard, 2000 WL 17774091, at *3. Impracticability does not mean "impossibility," but only difficulty or inconvenience in joining all members of the class. Doe v. Guardian Life Ins. Co. of Am., 145 F.R.D. 466, 471 (N.D.Ill. 1992). These circumstances include whether it is judicially efficient for the court to try such cases individually. Gaspar v. Linvatec Corp., 167 F.R.D. 51, 56 (N.D.Ill. 1996). Requiring a multiplicity of lawsuits by the individuals in both these classes, all of which involve similarly situated persons with relatively small claims, would run counter to one of the prime purposes of a class action. Swanson, 415 F.2d at 1333.

In this case, Plaintiffs easily meet the Rule 23(a)(1) numerosity requirement. Defendants cannot dispute that each of its retail branches has (or had) numerous non-exempt employees as defined by plaintiffs' proposed class definition. Conservatively, it is reasonable to conclude that for the past three years at least ten such employees worked at each of Defendants' 102 Illinois

branches. This would put this class figure at well over one thousand. With respect to the class of assistant branch managers, while their numbers are smaller, it nonetheless is large. Charter One employs assistant branch managers at each of its 102 Illinois retail branches. Over the past three years, and considering reasonable turnover, the potential class should easily exceed two hundred. Classes of these sizes routinely satisfy the numerosity requirement in this district. *See*, Barragan v. Evanger's Dog and Cat Food, Co., 2009 WL 2762403, at *3 (N.D.Ill. 2009) (certifying IMWL class for overtime pay owed, court found 131 potential class members to be sufficient); Swanson, 415 F.2d at 1333 (noting that 40 class members would be sufficient); Yon v. Positive Connections, Inc., 2005 WL628016, at *1-2 (N.D.Ill. 2005) (certifying IMWL class for owed overtime pay, court found 39 potential class members to be sufficient); Ladegaard 2000 WL 1774091, at *3-4 (this Court found that plaintiff's estimate that the class had "at least 50" members was sufficient to satisfy the numerosity requirement).

  **2.** ***Rule 23(a)(2): This Case Involves Issues of Fact or Law Common to the Class.***

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." As this Court has previously observed, "[t]he commonality requirement has been characterized as a 'low hurdle' easily surmounted. Immaterial factual differences among the class member's claims will not defeat a class action." Ladegaard, 2000 WL 1774091, at *4. "Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members…. [t]hus, class certification cannot be defeated merely because there are some factual variations among the members' grievances." Walker v. Bankers Life & Casualty Co., 2007 WL 2903180, at *4 (N.D.Ill. 2007). Commonality requires that there be at least one question of law or fact common to the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992). "A common nucleus of operative fact exists where defendants have engaged in

5

standardized conduct towards members of the proposed class." Ladegaard, 2000 WL 1774091, at *4.

All the Retail Branch Employees share the same issues of fact surrounding Defendants' failure to pay overtime for off the clock work. To date, 26 current and former Illinois Charter One Retail Branch Employees, covering all non-exempt hourly retail positions, have provided sworn testimony that they worked more than forty hours in a given workweek but were not fully paid overtime. (SOF ¶ 16). These employees have additionally testified that from their observations and experiences at Charter One, the other Retail Branch Employees were also subject to the same Charter One policies related to requiring "off the clock" work. (SOF ¶¶ 16-22, 24). All share the same circumstances utilized by Defendants to deny this pay. (SOF, ¶¶ 15-24). All share the same common issue of law whether Defendants' conduct violates the IMWL.

Courts in this district have concluded that an alleged common employment practice like the one set forth above represents a sufficient "common issue of fact or law" in meeting the Rule 23(a)(2) requirement. See, e.g., Barragan, 2009 WL 2762403, at *3 (Court found common issue because all of the proposed members claimed the same unlawful practice: being denial of overtime pay for hours worked in excess of forty in a given workweek). Analyzing this very issue in Ladegaard, this Court found the commonality requirement satisfied, although recognizing that there would be differences in the details of the class members' claims, because "the essence" of all their claims was the alleged failure of the defendant to pay overtime for certain types of work performed at certain periods of time. Ladegaard, 2000 WL 1774091, at *4. Here, the common issue of law shared by all class members is whether the Defendants' alleged conduct violates the IMWL. This Court in Ladegaard was faced with the same

6

proposition regarding the "common question of law" and found Rule 23(a)(2) met. The matter at hand is just like Ladegaard in meeting this element for the Retail Branch Employees.

The assistant branch managers also all share the same common issues of fact and law: whether Charter One's decision to classify them as salary exempt was correct under the IMWL under the facts in this case. Misclassification claims regarding a group of employees meet the commonality requirement under Rule 23(a)(2). *See*, Walker, 2007 WL 2903180, at *4 (Court found common issue to be whether defendant had misclassified plaintiffs and class members).

### *3. Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Class Claims.*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Plaintiffs Kapsa and Ross have the identical claims for relief and damages sought by the class of Retail Branch Employees under the IMWL (*i.e.* seeking relief for overtime for off the clock work). The Plaintiff Kapsa has the identical claim for relief sought by the class of assistant branch managers under the IMWL (*i.e.* seeking relief of overtime pay due to Defendants' misclassification as salary exempt). Addressing this requirement, this Court explained:

> The typicality requirement, although closely related to the commonality question, focuses on the class representative. A plaintiff's claim is typical if it arises from the same event or *practice or course of conduct* that gives rise to the claims of other class members and his or her claims are based on the same legal theory. Typicality does not mean identical, and the typicality requirement is liberally construed. The presence of defenses against some class members and not others does not defeat typicality.

Ladegaard, 2000 WL 1774091, at *5. (internal quotations and citations omitted) (emphasis added). Defendants often attempt to defeat this element by arguing that the class members' claims can somehow be distinguished from the named plaintiff. But, "[f]actual distinctions between the named plaintiff's claims and those of other class members do not necessarily

7

undermine typicality…. [b]ecause commonality and typicality are closely related, a finding of one often results in a finding of the other." Colbert, 2008 WL 4442597, at *7.

In this case, Plaintiffs Kapsa's and Ross' IMWL claims arise from *the same alleged unlawful conduct* shared by the class of Retail Branch Employees: Charter One's practice of failing to pay overtime for work performed off the clock. (Plaintiffs' SOF ¶¶ 7-8; 29-31). This common practice is and will be *the principal issue* of the litigation for both classes of employees. This makes the claims for both classes "typical" under Rule 23(a)(3). In Ladegaard, this Court was faced with identical circumstances as the matter at hand and found the typicality requirement satisfied because the plaintiff's and class members' claims arose out of the *same allegedly unlawful conduct*: "defendants' failure to pay wages for hours worked and overtime rates" under the IMWL. Id. at *5. The possible existence of individual variances between plaintiffs and class members has no bearing in this case. In Colbert, this Court rejected the defendants' argument that there were too many individual variations among the plaintiffs' and class members' claims. "Regardless of such factual differences…" this Court found the typicality requirement satisfied because the claims of the named plaintiffs and the class members "share the same 'essential characteristics'" in that they all had an interest in the defendants establishing a specific policy as it related to the plaintiffs and class members. Id. In the case at hand, Kapsa's and Ross' claims share the same essential characteristics with their respective classes.

Regarding the assistant branch manager class, Kapsa shares the same allegation of unlawful conduct. Kapsa and this class share the allegation that Charter One misclassified them as salary exempt under the IMWL, and in turn, failed to pay any overtime. In Walker, the court disregarded any "nuanced distinctions" between the claims of the named plaintiff and the class members and found the typicality requirement satisfied *because they all claimed ultimately the*

8

*same thing*: that defendant had denied them overtime pay by *misclassifying* them. Walker, 2007 WL 2903180, at *5.

Finally, the possibility that some class members may have unique defenses compared to the named plaintiffs is not dispositive. In In re Neopharm, Inc., 225 F.R.D. 563, 566 (N.D.Ill. 2004), this Court rejected the defendant's argument that certain class members were subject to various "unique defenses", and found the typicality requirement satisfied because the claims of the named plaintiffs and the class members were the same: that they were all victims of the same illegal conduct on the part of the defendant.

### 4. *Rule 23(a)(4): Plaintiffs and Their Counsel Will Adequately Represent the Class.*

Rule 23(a)(4) requires that the named class representatives "will fairly and adequately protect the interests of the class." The adequacy of representation determination is composed of two parts: (1) the adequacy of the named plaintiffs' counsel; and (2) the adequacy of protecting the different, separate, and distinct interest of the class members. Ladegaard, 2000 WL 1774091, at *5. "As to the second factor, the class representative must not have antagonistic or conflicting claims with the members of the purported class. Plaintiff[s] [Ross and Kapsa] are qualified to represent the classes only if [their] interest in proving [their] claims will lead [them] to prove the claims of the remainder of the class." Id. at *5-6. (internal quotations and citations omitted). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." Nielsen v. Greenwood, 1996 U.S. Dist. LEXIS 14441, at *16 (N.D.Ill. 1996).

Plaintiffs meet the necessary standards. Ross and Kapsa's overtime claims are identical to those of the rest of the class. Ross and Kapsa seek the same overtime pay due all other Retail Branch Employees in Illinois for work performed off the clock. Kapsa seeks overtime that was never paid under Charter One's policy to all Illinois assistant branch managers. Neither Plaintiff

has antagonistic interests to the subject matter of the lawsuit. In fact, both Plaintiffs possess the same interests and have suffered the same damages as the class members. Additionally, the Plaintiffs have shown their commitment to the litigation by submitting declarations and by assisting counsel in preparing this Motion. This qualifies them as "conscientious representative plaintiffs" and satisfies the adequacy of representation requirement. Robles v. Corporate Receivables, Inc., 220 F.R.D. 306, 314 (N.D.Ill. 2004); Ladegaard, 2000 WL 1774091, at *6.

Moreover, Plaintiffs' counsel are qualified and able to conduct the proposed litigation vigorously. Under Fed.R.Civ.P. 23(g), courts must consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. In this case, as demonstrated by the attached Declarations of Brendan J. Donelon and Daniel W. Craig, all of these requirements are firmly met. (Attached hereto as **Exhibits I** and **J**). Most notably, counsel has been found adequate to serve as class counsel in several other collective wage and hour cases, a factor this Court found significant in a very similar IMWL Rule 23 case. *See*, Ladegaard, 2000 WL 1774091, at *6 ("The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again.") (internal citations omitted).

**C.    This Action Satisfies the Requirements of Rule 23(b)(3):**

Plaintiffs' action meets the Rule 23(b)(3) prerequisites. Whether Charter One failed to pay for overtime hours, and whether such conduct violated the IMWL, are questions of fact and law that predominate over any other that may arise with the respective class members. In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the

10

requirements of one of the subdivisions of Rule 23(b). Ladegaard, 2000 WL 1774091, at *2. Certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### *1. Common Questions Predominate.*

An action demonstrates "predominance" of common questions where "the group for which certification is sought seeks to remedy a common legal grievance." Riordan v. Smith Barney, 113 F.R.D. 60, 65 (N.D.Ill. 1986). For reasons set forth above with respect to commonality under Rule 23 (a)(2) and typicality under Rule 23(a)(3), there exists predominating common questions of fact and law. There can be no dispute that the class members' claims arise from the same course of conduct by Defendants as the claims of the named Plaintiffs. With respect to theRetail Branch Employees, the common question regarding Plaintiffs' and the class' IMWL claim revolve around Defendants' failure to pay for all off the clock work, and if not, whether this violated the IMWL. With respect to the assistant branch manager employees, the common question regarding Plaintiffs' and the class' IMWL claim revolve around whether they were misclassified as salary exempt by Defendants. Questions of Defendants' liability for overtime and the related damages regarding these two classes predominate over any individualized questions of defenses or damages. *See*, In re Neopharm, 225 F.R.D. at 568 (This Court found the requirement met because "the focus of the litigation" involved whether defendants' actions were illegal and caused the plaintiffs' damages).

In cases involving claims for unpaid wages under the IMWL similar to the Retail Branch Employee class, courts in this district have routinely certified classes under Rule 23(b)(3). In

11

Ladegaard, noting that the commonality and typicality requirements had already been satisfied, this Court further held that it was obvious that the question of defendants' liability for overtime predominated over any individualized issues. Consequently, this Court found the requirement satisfied in certifying the Plaintiffs' IMWL claim. Ladegaard, 2000 WL 1774091, at * 7. *See also*, Barragan, *supra*; Yon, *supra*; Hernandez v. Gatto Industrial Platers, Inc., 2009 WL 1173327 (N.D.Ill. 2009); Jonites v. Exelon, 2006 WL 2873198 (N.D.Ill. 2006); Acosta v. Scott Labor, LLC, 2006 WL 27118 (N.D.Ill. 2006). The same situation exists here.

Cases regarding misclassification of employees like the assistant branch manager class also meet the Rule 23(b)(3) requirement. In Walker, 2007 WL 2903180, at *8-10, the court found that the issue of whether the defendant had misclassified the plaintiffs to be a common issue that predominated over any individual issues or defenses.

### 2. *Superiority of Class Action Method.*

A class action is superior to other methods of adjudication for the thousands of similar claims in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the proposed classes. *See*, Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181 (N.D.Ill. 1992). A class action, with its benefits of consistency and efficiency, is the superior method of resolving a controversy involving large numbers of plaintiffs. Barragan, 2009 WL 2762403, at *4. "A class action would be the most efficient use of judicial resources in resolving the common issues alleged in this action." In re Neopharm, 225 F.R.D. at 568. A class action in this case for both classes of employees is an appropriate method for the fair and efficient adjudication of the controversy between the classes and defendant. In this proceeding, the parties will be allowed to resolve the claims of thousands or

more workers who have relatively small claims. This can be accomplished in one simple, coordinated proceeding, thus conferring significant benefits upon each class member. Id.

In determining whether a class action is superior to other methods for resolving a controversy, the Court considers: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Ladegaard, 2000 WL 1774091, at *7. Evaluating these factors leads to the inescapable conclusion that a class action is a superior method of adjudicating the Illinois state claims.

Under the first and second factors, there are no interests for an individual to control this litigation compared to the class process. As previously demonstrated, the individual interests regarding the legal claims and damages will be the same throughout the class. Also, to Plaintiffs' good faith knowledge and belief, there are no other related pending suits brought by individual class members other than Plaintiffs. "Thus, there does not appear to be an interest of individual members in controlling the prosecution of the state claims." Id. There are no other legal proceedings that have been commenced involving these class members and the Defendants for these claims.

Under the third factor, it is extremely desirable to have all this litigation concentrated in one action before this Court. Charter One operates branches in three states, Illinois being one of them. As previously stated, the factual issues regarding the off the clock work and misclassification are the same among the two classes. The legal issues regarding Defendants'

13

conduct violating the IMWL is the same throughout the respective classes. This single forum will create consistency among the class members' near identical claims.

Under the fourth factor, there will not be any difficulties in the management of the two class claims. The two classes are easily identifiable. The size of the classes, or the geographical location of their members, by no means creates any difficulty. The Plaintiffs are aware that the two classes are also bringing the same claims under the Fair Labor Standards Act (FLSA) under Counts I and III. However, courts have routinely allowed opt-out state class claims to coexist with opt-in class claims under the FLSA. "[T]he fact that the named plaintiff[s] [have] instituted a federal claim - the FLSA action - does not alter this conclusion. The presence of both FLSA and state claims has not prevented courts from certifying the state claims under Rule 23(b)." Ladegaard, 2000 WL 1774091, at *7. *See also*, Barragan, 2009 WL 2762403, at *5 ("Simply, the FLSA does not preempt the field of wage and hour regulation; therefore, Congress did not prohibit Plaintiffs from prosecuting their IMWL claim as allowed by Illinois law, notwithstanding the fact that their state claim has different procedures than the FLSA for maintaining a class action."); O'Brien v. Encotech Const. Serv., Inc., 203 F.R.D. 346, 352 (N.D.Ill. 2001) ("If [plaintiffs] are denied the opportunity of filing a class suit for their state claims in this court, they could file a suit for these claims in state court. That result, however, would be inefficient. It would be desirable to concentrate all litigation related to plaintiffs' common set of facts in this forum."). "Further, any issues specific to individual members, such as damages or defenses, can be determined through a separate motion or hearing." Ladegaard, 2000 WL 1774091, at *7. Finally, no confusion will result from notice to class members of both their right to "opt-in" to the FLSA action and "opt-out" of the Rule 23 state claims, since plaintiffs' counsel have drafted such joint notices in the past without difficulty. (Declaration of

14

Brendan J. Donelon, ¶8); *see*, Ladegaard, 2000 WL 1774091, at *7 (where this Court cited with approval to plaintiffs' counsel's prior experience in drafting joint notices as sufficient to address any concerns regarding confusing notices under FLSA and IMWL); O'Brien, 203 F.R.D. at 352 (same).

### IV.     CONCLUSION

Plaintiffs respectfully request the Court to enter an order granting all the relief sought in the Motion.

Respectfully submitted,



*/s/ Brendan J. Donelon*  
Brendan J. Donelon, N.D.Ill. #43901  
802 Broadway, 7th Floor  
Kansas City, Missouri 64105  
Tel:    (816) 221-7100  
Fax:    (816) 472-6805  
brendan@donelonpc.com

*/s/ Daniel W. Craig*  
Daniel W. Craig, N.D.Ill. #6230845  
1125 Grand Blvd., Ste. 900  
Kansas City, MO 64106  
Tel: 816-221-7772  
Fax: 816-283-3823  
DCraig@DanCraigPC.com

**ATTORNEYS FOR PLAINTIFFS**

**Certificate of Service**

I hereby certify that a true and correct copy of the above was sent on December 15, 2009 pursuant to the service requirements of the ECF/CM for the Northern District of Illinois to all defense counsel of record.