UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYNTHIA G. ROSS, JAMES KAPSA, and SHARON WELLS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RBS CITIZENS, N.A. d/b/a CHARTER ONE and CITIZENS FINANCIAL GROUP, INC., <br><br> Defendants. | No. 09 CV 5695 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

Plaintiffs, Synthia Ross, James Kapsa, and Sharon Wells, filed this putative class/collective action against RBS Citizens, N.A., doing business as Charter One Bank ("Charter One"), and Citizens Financial Group, Inc. (collectively, "defendants") for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. § 105/1 *et seq.* Before the court is plaintiffs' motion for class certification of the IMWL claim. The court's jurisdiction of the FLSA claims rests on 29 U.S.C. § 216(b) and of the IMWL claim on 28 U.S.C. § 1367. For the following reasons, the motion [#68] is granted.

## BACKGROUND

Charter One has approximately 102 banking branches in Illinois, of which eighty-eight are traditional branches and fourteen are in-store branches. Traditional branches are freestanding operations. In-store branches are housed inside another retail establishment, such as a

1

supermarket. These branches are organized into seven regions (six traditional regions, one in-store region), each with a regional manager. Each regional manager reports to a state director. Employees at Charter One's Illinois branches fall into the following nonexempt positions: teller, teller manager, head teller, senior teller, personal banker, and banker (collectively, "nonexempt employees").[1] These employees are entitled to receive overtime pay. Charter One also employs assistant branch managers ("ABMs") and branch managers at each branch who are classified as exempt and not paid overtime.

Ross worked as a bank teller from 2000 to 2005 at the Charter One Beverly Branch, a traditional branch, at 1367 W. 103rd St., Chicago, Illinois. She was promoted to teller manager in 2005. Ross was terminated from this position on February 10, 2007 due to issues she had with balancing currency. Ross testified that these issues arose because she was distracted by a robbery attempt that had occurred several weeks prior to her termination.

Kapsa began his employment with Charter One as an ABM in March 2006 at an in-store Charter One branch located at 2732 E. Main St., St. Charles, Illinois. For approximately three to four months of this time, Kapsa was the acting branch manager, as the previous branch manager departed and was not immediately replaced. In February 2007, Kapsa switched to part-time employment as a personal banker at the St. Charles location, working approximately one to two days a week with no overtime involved. In April 2008, he resumed full-time employment. In April 2009, he transferred to Charter One's in-store branch at 1290 E. Chicago Ave., Naperville, Illinois. Kapsa also spent short periods of time at in-store branches located at 3115 111th St.,

---

[1] These roles (and titles) may differ depending on whether an individual is employed at a traditional or in-store branch. Traditional branches reportedly employ teller managers, tellers, and bankers, while in-store branches only employ bankers, although these bankers also perform teller functions.

Naperville, Illinois, and 12690 S. State Route 59, Plainfield, Illinois, where he occasionally filled in when those branches were short-staffed. In September 2009, Kapsa was terminated for incentive fraud.

Plaintiffs seek to certify two classes, one of nonexempt employees ("the hourly class"), represented by both Ross and Kapsa, and the other of ABMs ("the ABM class"), represented by Kapsa. The proposed definition of the hourly class is:

> All current and former non-exempt employees of Defendants who have worked at their Charter One retail branch locations in Illinois at any time during the last three years, who were subject to Defendants' unlawful compensation policies of failing to pay overtime compensation for all hours worked in excess of forty per work week.

Third Am. Compl. ¶ 38. Plaintiffs allege that Charter One has a policy of denying overtime pay to its Illinois nonexempt employees for off the clock work in violation of the IMWL. Specifically, they allege that (1) Charter One instructs its nonexempt employees to record hours worked over forty per week, (2) Charter One occasionally erases or modifies nonexempt employees' recorded overtime hours, (3) Charter One provides comp time to nonexempt employees instead of paying overtime, and (4) Charter One requires its nonexempt employees to perform work during unpaid breaks. Plaintiffs have submitted ninety-six statements of potential hourly class members who worked at eighty-five branches under fifty-three different managers. All claim to have been denied overtime during their employment and over eighty-six percent of these individuals indicated that the allegations above applied to their experiences.

The proposed definition of the ABM class is:

> All current and former Assistant Branch Manager employees of Defendants who have worked at their Charter One retail branch locations in Illinois at any time during the last three years, who were subject to Defendants' unlawful

> compensation policies of failing to pay overtime compensation for all hours
> worked in excess of forty per work week.

Third Am. Compl. ¶ 72. Kapsa alleges that Charter One misclassified these employees in that they spent the majority of their time performing nonexempt work, which would entitle them to overtime pay. Kapsa has submitted twenty-four statements from ABMs that detail the type of work they typically engaged in. The overwhelming majority indicate that over seventy-five percent of their time was spent on nonexempt work.

## LEGAL STANDARD

A party seeking to certify a class action must meet two conditions. First, the movant must show the putative class satisfies the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *Oshana* v. *Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Rosario* v. *Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Second, the action must qualify under at least one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario*, 963 F.2d at 1017; *Hardin* v. *Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993). Here, plaintiffs seek certification under Rule 23(b)(3), which requires a finding that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Courts retain broad discretion in determining whether a proposed class meets the Rule 23 certification requirements. *Keele* v. *Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). While the requirements of Rule 23 should be liberally construed to support the policy favoring the maintenance of class actions, *King* v. *Kansas City S. Indus.*, 519 F.2d 20, 25–26 (7th Cir. 1975),

the moving party bears the burden of showing that the requirements for class certification have been met. *Hardin*, 814 F. Supp. at 706.

## DISCUSSION

### I. Rule 23(a) Requirements[2]

#### A. Commonality

For the commonality requirement to be met, "there must exist 'questions of law or fact common to the class.'" *Keele*, 149 F.3d at 594; Fed. R. Civ. P. 23(a)(2). This has been characterized as a "low hurdle easily surmounted," *Scholes* v. *Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (citation omitted) (internal quotation marks omitted), and "[a] common nucleus of operative fact is usually enough." *Keele*, 149 F.3d at 594 (citation omitted) (internal quotation marks omitted); *Rosario*, 963 F.2d at 1017–18; *see also Tylka* v. *Gerber Prods. Co.*, 178 F.R.D. 493, 496 (N.D. Ill. 1998) (noting that if at least one question of law or fact is common to the class, then commonality is satisfied). A common nucleus exists where the class members' claims hinge on the same conduct of the defendants. *Tylka*, 178 F.R.D. at 496.

Plaintiffs allege that members of the hourly class were subjected to the same policy of failure to pay for overtime work. A policy applicable to a class of employees is enough to establish a common question of fact or law. *See Barragan* v. *Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (alleged denial of overtime pay sufficed to establish a common issue of law or fact). Similarly, whether the ABM class was misclassified as exempt is a question common to members of that class.

---

[2] Defendants do not challenge that plaintiffs have satisfied the numerosity requirement.

### B. Typicality

To meet the typicality requirement, the named plaintiffs' claims or defenses must be typical of the class. Fed. R. Civ. P. 23(a)(3); *Keele*, 149 F.3d at 594. The typicality requirement focuses on the class representatives; indeed, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (citations omitted) (internal quotation marks omitted); *De La Fuente* v. *Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations omitted) (internal quotation marks omitted). The existence of defenses against certain class members does not defeat typicality. *Wagner* v. *NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar* v. *Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

Defendants argue that Kapsa is not typical of the ABM class because he worked only at an in-store branch that was consistently understaffed. While there may be some differences between an ABM's job duties at in-store and traditional branches,[3] factual distinctions between the named plaintiffs' claims and those of other class members do not necessarily undermine typicality. *De La Fuente*, 713 F.2d at 232; *Owner-Operator Indep. Ass'n, Inc.* v. *Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (stating that the typicality requirement presents a "low hurdle . . . , which requires neither complete coextensivity or even substantial identity of claims"). The legal theory on which Kapsa's and the ABM class's claim is based is the same.

---

[3] The job descriptions and job performance standards are the same for ABMs at in-store and traditional branches, however. While the application of these standards may differ between in-store and traditional branches, the use of them across the board undercuts defendants' claim that Kapsa is atypical of the class he seeks to represent.

6

Their claim arises out of the same allegedly standardized unlawful conduct, Charter One's misclassification of them as exempt employees. This is sufficient to satisfy the typicality requirement.[4]

Similarly, Kapsa's and Ross's claims are typical of the hourly class as they are based on the same legal theory, a failure to pay wages as required for work that was performed off the clock. While Ross's branch may have been busier than others and her duties heavier than those of a teller or banker, these factual distinctions are not enough to make her claim atypical. *See Oshana*, 472 F.3d at 514 (typicality met despite "some factual variations" between named plaintiffs' claims and those of other class members). As discussed below with respect to adequacy, the fact that Ross and Kapsa are no longer Charter One employees does not bar certification. Finally, any potential defenses defendants may have against these particular plaintiffs, such as tardiness, do not undermine typicality. *See Wagner*, 95 F.3d at 534 ("Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members.").

---

[4] Defendants also argue that, because Kapsa does not consider himself a representative of ABMs at traditional branches, his claim is not typical. This argument, however, is belied by the record. Kapsa did not state that he represented only in-store ABMs, but rather just that he only has personal knowledge of in-store branch policies. A class representative need only have a "limited understanding of" the claim. *Miller* v. *Material Scis. Corp.*, No. 97 C 2450, 1999 WL 495490, at *4 (N.D. Ill. June 28, 1999).

C.     **Adequacy of Representation**

To meet Rule 23's adequacy of representation requirement, "the representative must be able to 'fairly and adequately protect the interests of the class.'" *Keele*, 149 F.3d at 594 (quoting Fed. R. Civ. P. 23(a)(4)). The requirement has "two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chi. Police Ass'n*, 7 F.3d at 598 (quoting *Sec'y of Labor* v. *Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (en banc)). The burden of demonstrating the class representative's adequacy is not heavy. *Sledge* v. *Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998).

Defendants do not contest that plaintiffs' counsel is adequate. Rather, they challenge Ross's and Kapsa's ability to represent the class due to their alleged lack of credibility and integrity. Because the lead plaintiffs will act as fiduciaries for the absent plaintiffs, the court can examine their integrity and credibility in determining whether they are adequate class representatives. *Searcy* v. *eFunds Corp.*, No. 08 C 985, 2010 WL 1337684 (N.D. Ill. Mar. 31, 2010) ("The honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry 'because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.'" (citation omitted)); *Kaplan* v. *Pomerantz*, 132 F.R.D. 504, 508–510 (N.D. Ill.1990). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims," *Rosario*, 963 F.2d at 1018 (citation omitted), and a plaintiff with credibility problems may be considered to have interests antagonistic to the class. *Kaplan*, 132 F.R.D. at 510. Credibility problems do not automatically render a proposed class representative inadequate, however, and some courts in this district have found credibility to be

irrelevant.  *See Levie* v. *Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007) ("Credibility is not a requirement of a class representative, and whether or not a plaintiff is credible is irrelevant to that person's ability to be a class representative."); *Streeter* v. *Sheriff of Cook Cnty*, 256 F.R.D. 609, 613 (N.D. Ill. 2009); *Phipps* v. *Sheriff of Cook Cnty.*, 249 F.R.D. 298, 301 (N.D. Ill. 2008) (citing *Levie*).  Where credibility has been considered, courts have generally found inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud.  *See, e.g.*, *Brown* v. *Yellow Transp., Inc.*, No. 08 C 5908, 2009 WL 3270791, at *3 (N.D. Ill. Oct. 9, 2009); *Roe* v. *Bridgestone Corp.*, 257 F.R.D. 159, 168–69 (S.D. Ind. 2009) (collecting cases); *Stanich* v. *Travelers Indem. Co.*, 259 F.R.D. 294, 312–315 (N.D. Ohio 2009); *Lapin* v. *Goldman Sachs & Co.*, 254 F.R.D. 168, 177 (S.D.N.Y. 2008) ("[O]nly when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." (citation omitted) (internal quotation marks omitted)).

Both Kapsa and Ross were terminated from their positions with Charter One for integrity violations.  Ross had balancing problems several times in the month prior to her termination.  The court declines to place much weight on this, however.  Ross testified that she was a victim of an attempted robbery while at work several weeks prior to her termination, which resulted in her having difficulty concentrating while in that environment.  The fact that she had worked for Charter One (or its predecessors) for more than six years apparently without similar incident supports her explanation and undermines defendants' contention that she is an inadequate class representative.  Moreover, while the reason for her termination raises a credibility issue, it does

9

not directly bear on the issues in this litigation. Kapsa was terminated for engaging in incentive fraud, specifically, opening shell accounts so as to accumulate points toward incentives. Kapsa denies having done so. In light of a lack of documentary evidence regarding the number of hours worked that Kapsa claims not to have been paid for, defendants argue that the reason for his termination bears directly on whether Kapsa's testimony can be trusted. They posit that a willingness to open shell accounts to acquire incentives correlates to a willingness to provide false testimony if it would lead to greater monetary gain. Such a generalized and speculative credibility attack, particularly when considered against the many statements plaintiffs have submitted that support Kapsa's testimony, is not "so sharp that they jeopardize the interests of absent class members."[5] *Lapin*, 254 F.R.D. at 177. Similarly, Kapsa's and Ross's purported false or contradictory testimony that defendants cite to does not warrant denial of class certification. Although some of the examples cited are disconcerting, many are taken out of context or simply clarify or further expand upon previous statements.

      Defendants' challenges to the extent of Kapsa's and Ross's interest in the litigation also fail. "A class representative . . . needs to have only a limited understanding of and a minimal interest in the litigation, as well as a basic understanding of the class composition." *Miller* v. *Material Scis. Corp.*, No. 97 C 2450, 1999 WL 495490, at *4 (N.D. Ill. June 28, 1999). Ross and Kapsa meet this requirement. The fact that Ross is seeking compensation for overtime she was not paid is not surprising; most plaintiffs generally seek monetary damages, particularly in a case alleging failure to pay overtime, as in this one. While Ross testified that she would not

---

[5] Whether Kapsa's actions were unethical is not a question the court can answer on this record. Defendants have omitted portions of Kapsa's deposition testimony, making it difficult for the court to determine whether he gave an explanation for the conduct underlying his termination on top of his general disagreement that he engaged in incentive fraud.

accept a settlement if the class received money but she did not, this does not mean she would sell out the class for her own benefit but rather that she would seek some sort of benefit for both the class and herself, which is natural in the context of a class action. *See Rand* v. *Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991) ("Class actions assemble small claims–usually too small to be worth litigating separately, but repaying the effort in the aggregate. A representative plaintiff gains nothing from the collective proceeding."). Ross did not testify that she was unaware of the contours of the class she seeks to represent, only that she seeks to represent current employees to the extent they are subject to the same policies. *Cf. Massengill* v. *Bd. of Educ., Antioch Cmty. High Sch.*, 88 F.R.D. 181, 186 (N.D. Ill. 1980) (proposed class representative was inadequate where, among other things, she was unaware of the composition of the class). That Kapsa and Ross no longer work at Charter One does not defeat class certification nor necessarily imply that they would not seek changes to Charter One's policies and procedures, and their submitted testimony is not to the contrary.[6] Kapsa and Ross do not have to be the ideal class representatives. They need not be perfect, only adequate. *See Stanich*, 259 F.R.D. at 318. On the record before it, the court finds them to be so.

## II.     Rule 23(b)(3) Requirements

Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To determine whether predominance

---

[6] Although Ross testified that any such changes made would not affect her and she personally sought money, this is not an admission that she would not advocate for such changes. Ross has no disincentive to ask for such relief on behalf of the class and counsel is undoubtedly aware of Ross's responsibility to adequately represent the class with respect to injunctive relief.

and superiority are satisfied, courts examine "the substantive elements of plaintiffs' claims, the proof necessary for those elements, and the manageability of trial on those issues." *Reed* v. *Advocate Health Care*, No. 06-c-3337, 2009 WL 3146999, at *4 (N.D. Ill. Sept. 28, 2009) (citing *Simer* v. *Rios*, 661 F.2d 655, 672-73 (7th Cir. 1981)).

### A. Predominance

"Although related to Rule 23(a)'s commonality requirement, 'the predominance inquiry is far more demanding.' To satisfy this aspect of Rule 23(b)(3), 'the plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims.'" *Pavone* v. *Aegis Lending Corp.*, No. 05-c-1529, 2006 WL 2536632, at *4 (N.D. Ill. Aug. 31, 2006) (quoting, *inter alia*, *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 623–24, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997)). Plaintiffs need only show that common proof will predominate with respect to their claims. *Driver* v. *AppleIllinois, LLC*, 265 F.R.D. 293, 311 (N.D. Ill. 2010).

#### 1. The Hourly Class

Although Charter One officially had a policy stating that all hours worked would be compensated, plaintiffs argue that an unofficial policy existed to deny the hourly class of overtime. They claim this policy was dictated by upper management and was implemented in several ways, including telling employees that they could not record overtime hours, altering time sheets, instructing employees to alter their timesheets to remove overtime hours, offering future time off in lieu of overtime pay, and automatically deducting time for breaks not taken. Plaintiffs have submitted sworn statements from ninety-six potential class members, who together worked at eighty-five of Charter One's branches (approximately eighty-three percent of

Charter One's Illinois branches) under fifty-three different managers. All respondents stated they were denied overtime, with over eighty-five percent indicating this occurred in the ways enumerated above. Seventy-eight percent reported that managers relayed that they had been instructed not to pay overtime.[7] Time records also demonstrate significant modifications to employees' recorded time.[8] Defendants argue that determining whether overtime was denied would require individualized, or at least branch by branch, manager by manager, determinations, citing to deposition testimony of some of the individuals who submitted statements and their own submitted declarations that undercut claims of unpaid overtime. The court concludes, however, that the number of people making the same allegations across branches, managers, positions, and time frames has reached a point from which it may be inferred that the common issue of whether a company-wide policy existed to deny overtime will predominate over the variations in methods used to accomplish the alleged policy. The complexity of proof is a problem plaintiffs will have to address in presenting their case on the merits but it does not negate predominance of the central, common issue.

Defendants further argue that to prove liability individual inquiries will be required as to whether an individual recorded all time worked each week and, if not, the reason why; whether an individual worked over forty hours in that week and, if so, whether that time was paid; whether an individual's manager instructed the individual to work overtime or at least knew that overtime was being worked; whether an individual's manager removed overtime that was

---

[7]The court understands defendants' point that statements calling for yes or no answers have limitations. Nonetheless, the statements are remarkably uniform in their support of plaintiffs' theory.

[8] Analysis of these modifications will be necessary to determine whether they reveal a standard practice of removing overtime hours.

recorded and, if so, whether the change was lawful; and whether the amount of overtime that was not paid was *de minimis*. These inquiries, however, are more relevant to a determination of an individual's damages. Courts have not traditionally found individualized questions of damages to prevent class certification. *See Kohen* v. *Pac. Inv. Mgmt. Co.*, 244 F.R.D. 469, 476 (N.D. Ill. 2007) ("Inquiry into matters of damage is not ordinarily made at the class certification stage."), *aff'd*, 571 F.3d 672, 677 (7th Cir. 2010); *Katz* v. *Comdisco, Inc.*, 117 F.R.D. 403, 412 (N.D. Ill. 1987); *see also Arreola* v. *Godinez*, 546 F.3d 788, 801 (7th Cir. 2008) ("Although the extent of each class member's personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts."). To the extent such inquiries will be necessary to a determination of liability, solutions can be devised to make the inquiry fair, efficient, and manageable.

### 2. The ABM Class

Defendants argue that Kapsa has not presented any common method of establishing that the ABM class was misclassified as exempt and that making such a determination would involve an individualized assessment of the way each ABM spends his or her time. As another court in this district noted, however, "the criteria used to determine whether employees can be classified as [executive or] administrative workers do not require an individualized employee-by-employee inquiry."[9] *AON Corp. Wage & Hour Emp't Practices Litig.*, No. 08 C 5802, 2010 WL 1433314, at *7 (N.D. Ill. Apr. 8, 2010). In evaluating whether an employee qualifies for the executive or administrative exemptions, the court looks to what the employee's "primary duty" is. 29 C.F.R.

---

[9] The court assumes that ABMs are classified as exempt under the executive or administrative exemptions. The standards used to determine if these exemptions to the IMWL's overtime provisions apply are the same as those used in the FLSA context. 820 Ill. Comp. Stat. § 105/4a(2)(E). These standards are found at 29 C.F.R. pt. 541.

14

§§ 541.100, 541.200. "The use of the term 'primary duty' implies that the applicability of the [executive or] administrative exception focuses on the core work functions of the employees at issue and does not require a detailed individualized inquiry as to the day-to-day tasks performed." *AON Corp.*, 2010 WL 1433314, at *7. In addition to their reliance on the ABMs' uniform job description and performance standards,[10] plaintiffs have submitted declarations from twenty-four ABMs indicating that a majority of their time was spent on nonexempt job duties. Defendants have countered these declarations with their own and have highlighted differences in the tasks performed by ABMs based on staffing levels, the size and type of branch, the branch manager, and the busyness of the branch. While there obviously is some variation in ABM duties across branches, the relevant inquiry is what an ABM's primary duty is. The court is not convinced that individualized analyses of each employee's duties will be necessary to this inquiry.

### B. Superiority

In considering the satisfaction of the superiority requirement, the court will look at "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be

---

[10] The Ninth Circuit has recently held that reliance on uniform exemption policies to the near exclusion of other relevant factors is an abuse of discretion. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 955 (9th Cir. 2009). Considering such a policy in conjunction with other factors, however, is not impermissible. *Id.* at 957 ("An internal policy that treats all employees alike for exemption purposes suggests that the employer believes some degree of homogeneity exists among the employees. This undercuts later arguments that the employees are too diverse for uniform treatment. Therefore, an exemption policy is a permissible factor for consideration under Rule 23(b)(3).").

encountered in the management of a class action." Fed. R. Civ. P. 23(b). In this case, these factors favor the use of a class action to adjudicate the IMWL claims. The court is not aware of any pending suits brought by individual class members. This suggests that members of the class do not have strong incentive to individually control the prosecution of their cases. Concentrating separate actions based on the same underlying conduct in one action promotes judicial economy and efficiency and consistency of judgments. Although some difficulties may be encountered in managing the class action, the class is relatively small, and the court is confident that the parties can devise solutions to address these issues and ensure that the adjudication of the case is both fair and efficient.

## CONCLUSION AND ORDER

Because plaintiffs have satisfied the necessary elements of Rule 23(a) and Rule 23(b)(3), the court grants plaintiffs' motion for class certification [#68]. The hourly class is defined as: All current and former non-exempt employees of defendants who have worked at their Charter One retail branch locations in Illinois at any time during the last three years, and who were subject to defendants' unlawful compensation policies of failing to pay overtime compensation for all hours worked in excess of forty per work week. The ABM class is defined as: All current and former Assistant Branch Manager employees of defendants who have worked at their Charter One retail branch locations in Illinois at any time during the last three years, and who were subject to defendants' unlawful compensation policies of failing to pay overtime compensation for all hours worked in excess of forty per work week. James Kapsa and Synthia Ross are appointed class representatives of the hourly class. James Kapsa is appointed class

representative of the ABM class. Brendan Donelon of Donelon, P.C. is appointed class counsel for both classes.

Dated: October 8, 2010          Enter:_____
                                JOAN HUMPHREY LEFKOW
                                United States District Judge