**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **SYNTHIA G. ROSS, et al., on behalf of themselves and all others similarly situated,**<br><br>      **Plaintiff,**<br><br>    **v.**<br><br>**RBS CITIZENS, N.A., d/b/a CHARTER ONE, et al.,**<br><br>      **Defendant.** | **Civil Action No. 1:09-CV-5695**<br><br>**Judge     Joan Lefkow**<br><br>**Magistrate   Maria Valdez** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT ON PLAINTIFFS' RULE 23 MISCLASSIFICATION CLAIM
UNDER THE ILLINOIS MINIMUM WAGE LAW**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 2

III.   ARGUMENT ........................................................................................................ 2
Assistant Branch Managers Are Exempt Employees as a Matter of Law

     A.     Assistant Branch Managers Meet the Requirements of the Executive
          Exemption Short Test ............................................................................. 4

          1. Assistant Branch Managers' Primary Duty is Management ............................ 4

          2. Assistant Branch Managers Supervise Two or More Full Time
            Employees ........................................................................................... 11

     B.     Assistant Branch Managers Meet the Requirements of the Administrative
          Exemption Short Test ........................................................................... 11

          1. Assistant Branch Managers' Primary Duty is Office Work Directly
            Related to Defendants' General Business Operations ............................ 12

          2. Assistant Branch Managers' Primary Duty Includes the Exercise of
            Discretion and Independent Judgment .................................................. 13

IV.   CONCLUSION ................................................................................................... 15

CHI-1864836v2

## TABLE OF AUTHORITIES

**Page**

CASES

Akaosugi v. Benihana Nat'l Corp.,
No. C 11–01272, 2012 WL 3999855 (N.D. Cal. Sept. 7, 2012)............................15

Baldwin v. Trailer Inns, Inc.,
266 F.3d 1104 (9th Cir. 2001) ....................................................................6

Baudin v. Courtesy Litho Arts, Inc.,
24 F. Supp. 2d 887 (N.D. Ill. 1998) ........................................................7, 9

Blue v. Chubb Group,
No. 03 C 6692, 2005 WL 1667794 (N.D. Ill. July 13, 2005) .................................14

Bosch v. Title Max, Inc.,
No. 03-AR-0463-S, 2005 WL 357411 (N.D. Ala. Feb. 7, 2005) ............................12

Crayton v. Valued Servs. of Ala., LLC,
737 F. Supp. 2d 1320 (M.D. Ala. 2010) ...................................................12

D'Angelo v. J&F Steel Corp.,
No. 01-C-6642, 2003 WL 1888775 (N. D. Ill., April 14, 2003)...........................9

Darosa v. Fla. Default Law Group, P.L.,
No. 10–cv–611, 2011 WL 3715118 (M.D. Fla. Aug. 24, 2011)...........................12

Donovan v. Burger King Corp.,
672 F.2d 221 (1st Cir. 1982)..................................................................5

Donovan v. Burger King Corp.,
675 F.2d 516 (2d Cir. 1982)..................................................................3

Fetrow-Fix v. Harrah's Entm't, Inc.,
No. 10–cv–00560, 2011 WL 5827199 (D. Nev. Nov. 18, 2011)......................12, 15

Gooden v. Dolgencorp, Inc.,
No. 3:10–cv–1059, 2012 WL 1110085 (D.S.C. Apr. 3, 2012)...............................5

Grace v. Family Dollar Stores, Inc.,
No. 08-MD 1932, 2012 WL 3542584 (W.D.N.C. Aug. 16, 2012)..........................9

Hall v Sterling Park Dist.,
Nos. 08 C 50116, 09 C 50146, 2011 WL 1748710 (N.D. Ill. May 4, 2011) .....................7, 8

*Hicks v. Mercedes-Benz U.S. Int'l, Inc.*,
No. 08–cv–0536, 2012 WL 2863249 (N.D. Ala. July 5, 2012)............................................10

*Jackson v. Advance Auto Parts, Inc.*,
362 F. Supp. 2d 1323 (N.D. Ga. 2005) ..............................................................................8, 13

*Jones v. Va. Oil Co.*,
69 F. App'x 633 (4th Cir. 2003) ................................................................................................7

*Kastor v. Sam's Wholesale Club*,
131 F. Supp. 2d 862 (N.D. Tex. 2001) ...................................................................................14

*Kennedy v. Commw. Edison Co.*,
410 F.3d 365 (7th Cir. 2005) ..................................................................................................14

*Mayne-Harrison v. Dolgencorp, Inc.*,
No. 1:09-CV-42, 2010 WL 3717604 (N.D. W. Va. Sept. 17, 2010) .......................................7

*Murray v. Stuckey's Inc.*,
939 F.2d 614 (8th Cir. 1991) ....................................................................................................6

*Nettles v. Allstate Ins Co.*,
---N.E.2d---, No. 1-10-2247, 2012 WL 1956858 (Ill. App. 1 Ct. May 29, 2012) ................3, 4

*Piscione v. Ernst & Young*,
171 F.3d 527 (7th Cir. 1999) ..................................................................................................14

*Reich v. Wyoming*,
993 F.2d 739 (10th Cir. 1993) ..................................................................................................8

*Roberts v. Dolgencorp, Inc.*,
No. 09–0005, 2010 WL 4806792 (M.D. Tenn. Nov. 18, 2010) .............................................10

*Scherer v. Compass Group USA, Inc.*,
340 F. Supp. 2d 942 (W.D. Wis. 2004) ...................................................................................9

*Scott v. SSP Am., Inc.*,
No. 09–CV–4399, 2011 WL 1204406 (E.D.N.Y. Mar. 29, 2011) ...................................5, 7, 9

*Thomas v. Speedway SuperAmerica, LLC*,
506 F.3d 496 (6th Cir. 2007) ..............................................................................................3, 10

*Wilbur v. Silgan Containers Corp.*,
No. 2:06-cv-02181, 2008 WL 3863700 (E.D. Cal. Aug. 19, 2008) ...................................8, 13

*Williamson v. Cook Composites & Polymers Co.*,
No. CV 08-8069, 2009 WL 4730887 (C.D. Cal. Dec. 7, 2009) .........................................8, 13

**STATUTES**

820 ILCS 105/4a(2)(E) ...................................................................................1, 3

**OTHER AUTHORITIES**

29 C.F.R. § 541.1 ...........................................................................................3

29 C.F.R. § 541.2 ........................................................................................3, 13

29 C.F.R. § 541.102 ........................................................................................4

29 C.F.R. § 541.103 ................................................................................. passim

29 C.F.R. § 541.108 ........................................................................................5

29 C.F.R. § 541.119 ...................................................................................1, 3, 4

29 C.F.R. § 514.201 ......................................................................................12

29 C.F.R. § 541.206 ...............................................................................1, 12, 13

29 C.F.R. § 541.207 ...................................................................................13, 14

29 C.F.R. § 541.214 ................................................................................. passim

FED. R. CIV. P. 23 ......................................................................................1, 15

CHI-1864836v2

# I.     INTRODUCTION

Even viewed in the light most favorable to Plaintiffs, the record evidence demonstrates that all members of the Assistant Branch Manager class—including Plaintiffs' witnesses who claim to have spent more than 50% of their time on nonexempt duties—are properly classified as exempt pursuant to the Illinois Minimum Wage Law's ("IMWL") executive and administrative exemptions.  *See* 820 ILCS 105/4a(2)(E).  Illinois law adopts a relaxed exemption standard, set forth in the "short tests" for the executive and administrative exemptions as defined in the U.S. Department of Labor regulations that were in effect in 2003.  *See id.;* 29 C.F.R. § 541.119 (2003); 29 C.F.R. § 541.214(a) (2003).  Contrary to the legally incorrect premise underlying Plaintiffs' misclassification claim, the controlling regulations specifically provide that employees who spend more than 50% of their time on nonexempt duties may be properly classified as exempt, if other factors weigh in favor of exempt status.  29 C.F.R. § 541.103; 29 C.F.R. § 541.206(b).  Indeed, in virtually every assistant manager exemption case in which summary judgment was granted *in favor of the employer*, the assistant manager spent more than—and often well more than—50% of his or her time on nonexempt work.  Here, the pertinent factors uniformly support exempt status and Defendants are entitled to summary judgment on Plaintiffs' Rule 23 misclassification claim.[1]

---

[1] Although Defendants vigorously dispute the claims of off-the-clock work by the Hourly class, Defendants do not move for summary judgment on those claims.  Therefore, this memorandum will be limited to 15 pages, rather than the 30 pages originally sought in Defendants' motion to file briefs in excess of 15 pages.  Additionally, as demonstrated in Defendants' concurrently filed decertification motion, on the fully developed evidentiary record, Plaintiffs cannot meet the requirements of Rule 23 with respect to the claim of the Hourly or Assistant Branch Manager classes.

## II.     FACTUAL BACKGROUND

Throughout the class period, Assistant Branch Managers have been a critical part of the management team at Defendants' locations.  (SOF ¶¶ 14-15.)  Assistant Branch Managers are charged with and perform the following duties:

> Overall responsibility for daily operations, including management of Teller (including Teller Manager) and Customer service staff … Provide sales leadership to ensure franchise growth through personal example and regular monitoring of team sales results.  Under guidance of Branch Manager may hire, fire, review and counsel staff.  Reviews teller work schedule.  Schedules Bankers/Customer Service Representatives to ensure adequate coverage.  Responsible for keeping branch in compliance with all bank policies and procedures and prepares branch for internal audits.  Monitors branch service quality levels and coaches staff to achieve appropriate levels.  Responds to complex customer complaints and questions.  Coordinates special events … Opens and/or closes branch.

(SOF ¶¶ 12-13.)  Defendants have structured the Assistant Branch Manager position and its compensation based on their determination that management is the most important aspect of the job.  (SOF ¶ 14.)  Many Assistant Branch Managers spend more than 50% of their time on management or operational duties.  (SOF ¶¶ 17, 23-24.)  While Plaintiffs' Assistant Branch Manager declarants testified that they spent 50% or less of their time on such duties (SOF ¶¶ 27-36), it is undisputed that even Plaintiffs' declarants performed at least some management duties, such as ensuring "established Charter One procedures were being followed by employees." (SOF ¶¶ 26, 67-68.)

## III.     ARGUMENT

**Assistant Branch Managers Are Exempt Employees as a Matter of Law**.

The IMWL exempts from its overtime requirements "[a]ny employee employed in a bona fide executive [or] administrative … capacity … including any as defined by or covered by the Federal Fair Labor Standards Act of 1938 and the rules adopted under that Act, as both exist on March 30, 2003, but compensated at the amount of salary specified in subsections (a) and (b) of

Section 541.600 of Title 29 of the Code of Federal Regulations as proposed in the Federal

Register on March 31, 2003 or a greater amount of salary as may be adopted by the United States

Department of Labor."  820 ILCS 105/4a(2)(E).  Thus, under the IMWL, to qualify for exempt

status, an employee must, as a threshold matter, earn a weekly salary of at least $455 per week.

*Id.*; *see* 29 C.F. R. § 541.600 (2012) (setting salary level at $455 per week).  If the employee

earns a salary of $455 per week, he or she must then meet the requirements of the "short tests"

for the exemptions.  29 C.F.R. § 541.119(a)[2]; 29 C.F.R. § 541.214(a); 820 ILCS 105/4a(2)(E);

*see Nettles v. Allstate Ins Co.*, ---N.E.2d---, No. 1-10-2247, 2012 WL 1956858, at *7-8 (Ill. App.

1 Ct. May 29, 2012) (holding that the "short test" for the administrative exemption applied to

employees who made over $455 per week).

The "short tests" set a lower standard for executive and administrative exemptions than

the "long tests" set out at 29 C.F.R. § 541.1 and § 541.2.  *See Thomas v. Speedway*

*SuperAmerica, LLC*, 506 F.3d 496, 502 (6th Cir. 2007) ("short test" is less stringent than "long

test"); *Donovan v. Burger King Corp.*, 675 F.2d 516, 520-21 (2d Cir. 1982) (affirming that

assistant managers subject to the "short test" met the requirements of the exemption, but assistant

managers subject to the "long test" did not).  The short test for the executive exemption confers

exempt status on employees if their "primary duty consists of the management of the enterprise

in which employed … and includes the customary and regular direction of the work of two or

more other employees therein."  29 C.F.R. § 541.119(a).  Similarly, the short test for the

administrative exemption provides that an employee "whose primary duty consists of … the

performance of office or nonmanual work directly related to management policies or general

---

[2] Citations to the federal regulations are to the version in effect on March 30, 2003 unless otherwise noted.

business operations of the employer … where the performance of such primary duty includes work requiring the exercise of discretion and independent judgment" is deemed exempt. 29 C.F.R. § 541.214(a).

Here, it is undisputed that throughout the class period, Assistant Branch Managers have been paid on a salary basis and earned more than $455/week. (SOF ¶ 6.) Thus, the short tests for the executive and administrative exemptions apply. *See Nettles,* 2012 WL 1956858, at *8.

**A.      Assistant Branch Managers Meet the Requirements of the Executive Exemption Short Test**.

To qualify as an exempt executive under the short test, Assistant Branch Managers must (1) have management as their primary duty; and (2) customarily and regularly direct the work of two or more other employees. 29 C.F.R. § 541.119(a). Based on the record evidence here, Assistant Branch Managers meet both requirements.

**1.      Assistant Branch Managers' Primary Duty is Management.**

The regulations describe a broad range of duties that qualify as exempt managerial work. 29 C.F.R. § 541.102 provides:

> For example, it is generally clear that work such as the following is exempt work when performed by an employee in the management of his department or the supervision of the employees under him:  Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in status; handling their grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the types of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and property.

CHI-1864836v2

Duties such as those described above, as well as work that is "directly and closely" related to those duties (for example, observing subordinates to determine whether they are performing their work properly, *see* 29 C.F.R. § 541.108), is exempt managerial work.

Here, it is undisputed that all Assistant Branch Managers perform at least some managerial duties. For example, they regularly interview and recommend applicants for hire; schedule staff and review time records; supervise and train staff; discipline, counsel and evaluate employees; monitor employees' sales results; and enforce company policies. (SOF ¶¶ 39-68, 77.) For their part, Plaintiffs' Assistant Branch Manager declarants concede that they performed exempt managerial work. In their form declarations, they all state that they "handl[ed] operational type duties such as making sure set and established Charter One procedures were being followed by employees or, in the absence of the Branch Manager, reviewing employee schedules and basic overall supervision of job duties that were established by Charter One's policies." (*See, e.g.,* SOF ¶ 26.) Supervising employees and ensuring compliance with an employer's corporate policies are quintessential exempt managerial duties. *See, e.g., Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982) ("[e]nsuring that company policies are carried out constitutes the 'very essence of supervisory work.'"); *Gooden v. Dolgencorp, Inc.*, No. 3:10–cv–1059, 2012 WL 1110085, at *6 (D.S.C. Apr. 3, 2012) (ensuring that company policies are followed is exempt managerial work); *Scott v. SSP Am., Inc.*, No. 09–CV–4399, 2011 WL 1204406, at *12 (E.D.N.Y. Mar. 29, 2011) ("[p]laintiff's responsibility as a supervisor to ensure that her staff complied with corporate policies and administrative regulations" was a "critical managerial duty.").

Moreover, as to all Assistant Branch Managers, the managerial work that they perform, regardless of the percentages of time they spend performing such work, is their primary duty.

- 5 -

Under the regulations, "an employee who spends over 50% of his time on *management* would have management as his primary duty." 29 C.F.R. § 541.103 (emphasis added). And, employees who spend 50% or more of their time on *nonexempt* duties may also have management as their primary duty, if other "primary duty" factors support exempt status:

> [I]n situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

29 C.F.R. § 541.103. Here, all of the above factors favor the finding that Assistant Branch Managers have management as their primary duty.

First, the amount of time Assistant Branch Managers spend on managerial duties supports the finding that management is their primary duty. Numerous Assistant Branch Managers spend more than 50% of their time on exempt managerial duties. (SOF ¶¶ 17, 23-24.) These class members automatically have management as their primary duty. 29 C.F.R. § 541.103. Assistant Branch Managers who spend 50% or more of their time on nonexempt duties also perform sufficient managerial work to support exempt status. Although they testified to spending a range of time percentages on managerial duties, on average, Plaintiffs' declarants testified to spending approximately 20% of their time on management duties, which is also consistent with the declaration of Plaintiffs' Branch Manager witness Ehmen. (SOF ¶¶ 25, 27-36.) This 20% figure is well within the range of the amount of exempt time that courts find consistent with exempt status. *See, e.g., Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1113, 1115-16 (9th Cir. 2001) (management was plaintiffs' most important duty despite claim of spending 90% of their time performing nonexempt tasks); *Murray v. Stuckey's Inc.*, 939 F.2d 614, 618-20 (8th Cir. 1991)

(primary duty test met where plaintiff performed nonexempt tasks 65 – 90% of the time); *Hall v Sterling Park Dist.*, Nos. 08 C 50116, 09 C 50146, 2011 WL 1748710, at *5 (N.D. Ill. May 4, 2011) (primary duty was managerial where plaintiff spent 75-80% of his time performing nonexempt tasks); *Jones v. Va. Oil Co.*, 69 F. App'x 633, 635 (4th Cir. 2003) (primary duty managerial where plaintiff spent 75 – 80% of her time performing nonexempt work); *Scott*, 2011 WL 1204406, at *10 (even accepting as true plaintiff's allegations that she spent 90% of her time on exempt tasks, plaintiff was properly classified as exempt); *Mayne-Harrison v. Dolgencorp, Inc.*, No. 1:09-CV-42, 2010 WL 3717604, at *19-23 (N.D. W. Va. Sept. 17, 2010) (granting summary judgment for the employer and holding that plaintiff was an exempt executive despite her testimony that she spent as much as 95% of her time on non-managerial work).

Second, the relative importance of Assistant Branch Managers' managerial duties—broadly speaking, their responsibility for ensuring the smooth daily operations of the branches and their supervision of the branch staff (SOF ¶¶ 8, 12-15, 17-22, 39-42)—as compared to their nonmanagerial duties, supports their exempt status.  Indeed, Defendants structured the Assistant Branch Manager position so as to establish managerial duties as the most important facet of the job.  (SOF ¶¶ 8, 14.)  The position is charged with playing a key role in branch management and operations.  (SOF ¶ 15.)  Consistent with this focus on management, when an employee is promoted from an hourly position to the Assistant Branch Manager position, the employee's base salary is typically increased substantially, and the sales goals and incentives are reduced.  (SOF ¶ 8.)  This compensation structure is designed to emphasize and reward management of the branch over sales activities.  (*Id.*); *see Baudin v. Courtesy Litho Arts, Inc.*, 24 F. Supp. 2d 887, 892 (N.D. Ill. 1998) (granting employer's summary judgment motion and noting that "[t]he employee's primary duty is that which is of principal importance to the employer, rather than

collateral tasks [that] may take up more than fifty percent of his or her time") (internal citations and quotations omitted); *Reich v. Wyoming*, 993 F.2d 739, 742 (10th Cir. 1993) (same); *Hall*, 2011 WL 1748710 at *5 (granting summary judgment for the employer and stating that "Plaintiff's description of the management functions he performed as 'inconsequential' and 'ancillary' are self-serving conclusions.").

Third, the frequency with which Assistant Branch Managers use their discretion and their relative freedom from supervision supports their exempt status. The core functions of the position require Assistant Branch Managers to independently exercise their discretion regularly. Assistant Branch Managers have overall responsibility for the branch operations and are regularly involved in the scheduling, supervising, training, coaching, hiring, firing, and counseling of the branch staff. (SOF ¶¶ 12, 15-16, 39-53, 57-65.) Assistant Branch Managers also regularly handle customer issues of all types, including customer complaints. (SOF ¶¶ 78.) As a matter of law, such duties are inherently discretionary. *See, e.g., Williamson v. Cook Composites & Polymers Co.*, No. CV 08-8069, 2009 WL 4730887, at *7 (C.D. Cal. Dec. 7, 2009) (plaintiff's authority to schedule employees and adjust their assignments based on need showed exercise of discretion); *Wilbur v. Silgan Containers Corp.,* No. 2:06-cv-02181, 2008 WL 3863700, at *8, *12 (E.D. Cal. Aug. 19, 2008) (coaching, training, disciplining, instructing, observing and delegating "firmly establish" discretion); *Jackson v. Advance Auto Parts, Inc.,* 362 F. Supp. 2d 1323, 1335 (N.D. Ga. 2005) (training, counseling and disciplining other employees; adjusting work schedules, and handling customer complaints and refunds demonstrated discretion).

That some Assistant Branch Managers claim to have been constrained by policy, and required to obtain authorization from higher managers to undertake these managerial duties, does

not undermine their discretion. *See Scherer v. Compass Group USA, Inc.*, 340 F. Supp. 2d 942, 954 (W.D. Wis. 2004) (granting employer's motion for summary judgment on plaintiff's FLSA claim, concluding that plaintiff, a chef, was an exempt executive, and stating that "[t]he fact that plaintiff's discretion was subject to some limitations and that he may have been supervised on a fairly regular basis is not sufficient to tip the scale [toward nonexemption]"); *Baudin*, 24 F. Supp. 2d at 893 (granting summary judgment for employer on plaintiff's FLSA and IMWL claims, explaining that "[c]lose supervision and established guidelines do not necessarily eliminate an employee's freedom and discretion"); *see also D'Angelo v. J&F Steel Corp.*, No. 01-C-6642, 2003 WL 1888775, at *5 (N. D. Ill., April 14, 2003) (despite the fact that plaintiff reported directly to the plant manager and "had to consult with the plant manager in numerous instances" plaintiff was exempt under the administrative exemption).

Although Plaintiffs' Assistant Branch Manager declarants attempt to disavow exercising discretion, they all admit to performing certain exempt tasks (SOF ¶¶ 21, 26, 42, 45, 49, 53, 56, 59, 64-65, 67-68, 72-73, 76), and the record is clear that, at a minimum, Assistant Branch Managers decide for themselves when to perform such managerial work and when to perform nonmanagerial work. (SOF ¶¶ 37-38.) Indeed, several Assistant Branch Managers testified to frequently "multitasking" between the two. (SOF ¶ 38.) This fundamental ability to decide when to perform exempt work or nonexempt work, based on their assessment of the needs of the business on a daily basis, establishes that Assistant Branch Managers frequently exercise their discretionary powers and are sufficiently free from supervision. *See Scott*, 2011 WL 1204406, at *10 (assistant manager met the executive exemption where she had the "authority to decide when, and whether, to begin and stop performing manual tasks, which represents the kind of discretion only managers possess"); *Grace v. Family Dollar Stores, Inc.*, No. 08-MD 1932, 2012

WL 3542584, at *5 (W.D.N.C. Aug. 16, 2012) (ability to choose when to perform exempt work demonstrates discretion); *Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, No. 08–cv–0536, 2012 WL 2863249, at *5 (N.D. Ala. July 5, 2012) (granting summary judgment for employer relying on evidence of the manager's discretion to "mak[e] the decision whether to perform the nonexempt work").

Finally, the last primary duty factor, the differential between Assistant Branch Managers' pay and the pay of the nonexempt employees, supports the Assistant Branch Managers' exempt status. Where a manager's rate of pay is substantially higher than the rate of pay of the nonexempt employees he or she supervises, this factor weighs in favor of finding that his or her primary duty is management. *See Thomas*, *LLC*, 506 F.3d at 509; *Roberts v. Dolgencorp, Inc.*, No. 09–0005, 2010 WL 4806792, at *10 (M.D. Tenn. Nov. 18, 2010) (that "plaintiff's 'hourly' salary was between 20 and 36 percent higher than the next highest paid non-salary employee" weighed in favor of exempt status). Here, employees typically receive a substantial increase in salary when they are promoted from an hourly position to the Assistant Branch Manager position. (SOF ¶ 8.) Additionally, according to Plaintiffs' analysis of payroll data for the Illinois Assistant Branch Manager and Hourly classes, and accepting it as true for the purpose of this motion only, Assistant Branch Managers earn, on average, approximately 100% more per hour than the nonexempt employees they supervise. (SOF ¶ 7.) In Plaintiffs' most recent supplement to their initial disclosures, they calculate the average hourly rate of an Illinois Assistant Branch Manager, including bonuses, to be $26.63, compared to an average hourly rate of $13.22 for Illinois nonexempt employees. (*Id.*)

2.  **Assistant Branch Managers Supervise Two or More Full Time Employees.**

In addition to having management as their primary duty, Assistant Branch Managers customarily and regularly direct the work of at least two full time employees. Since at least October 2006, Defendants staffing model has provided for at least 4.5 full-time equivalents ("FTEs") in each branch. (SOF ¶ 9.) Under that staffing model, at least 2.5 of these FTEs are Hourly employees. (*Id*.) Larger traditional branches have substantially more than 4.5 FTEs, with some branches having as many as 12 FTEs. (*Id*.) Under the current staffing model, smaller traditional branches do not have an Assistant Branch Manager. (SOF ¶ 10.) In all branches with Assistant Branch Managers, Assistant Branch Managers regularly direct the work of Hourly FTEs in the branch. (SOF ¶¶ 11, 39-46.) Thus, under all of Defendants' staffing models since October 2006, Assistant Branch Managers customarily and regularly supervised at least two full time employees.

In sum, the record evidence demonstrates that Assistant Branch Managers meet the requirements of the IMWL's executive exemption because (1) either they perform more than 50% exempt work or the factors set forth in 29 C.F.R. § 541.103 strongly favor the finding that management is their primary duty, and (2) they customarily and regularly supervise two or more full time employees. Thus, Defendants are entitled to summary judgment on Plaintiffs' claim that Assistant Branch Managers were misclassified.

**B.  Assistant Branch Managers Meet the Requirements of the Administrative Exemption Short Test.**

To determine whether Assistant Branch Managers are properly classified as exempt under the short test for the administrative exemption, the Court must assess whether (1) their primary duty consists of the performance of office or nonmanual work directly related to Defendants' management policies or general business operations; and (2) their duties include

work requiring the exercise of discretion and independent judgment.  29 C.F.R. § 541.214(a).

Both requirements are satisfied here.

### 1. Assistant Branch Managers' Primary Duty is Office Work Directly Related to Defendants' General Business Operations.

Assistant Branch Managers' responsibilities in managing the day-to-day operations of

their branches, in addition to being exempt managerial duties, also qualify as exempt

administrative duties.  29 C.F.R. § 514.214(a).  Indeed, the controlling regulations specifically

identify "assistant manager[s]" in "retail" establishments as an example of administratively

exempt employees.  29 C.F.R. § 514.201(a)(1); *see Darosa v. Fla. Default Law Group, P.L.*, No.

10–cv–611, 2011 WL 3715118, at *9 (M.D. Fla. Aug. 24, 2011) (finding that certain duties

qualify as both executive and administrative duties, including managing work flow, monitoring

employee performance, disciplining employees or effectively recommending discipline, training

employees, and making hiring recommendations, where the work "constitute[d] non-manual

work directly related to management policies"); *Fetrow-Fix v. Harrah's Entm't, Inc.*, No. 10–

cv–00560, 2011 WL 5827199, at *8 (D. Nev. Nov. 18, 2011) (finding employee was exempt

under the administrative exemption where she was "directly involved with personnel

management and ensuring compliance with company policy"); *Crayton v. Valued Servs. of Ala.,

LLC*, 737 F. Supp. 2d 1320, 1340 (M.D. Ala. 2010) (store manager of loan transaction business

who interviewed employees; trained, managed and disciplined employees; and generally

managed the day-to-day operations of her store was administratively exempt); *Bosch v. Title

Max, Inc.*, No. 03-AR-0463-S, 2005 WL 357411, at *6-7 (N.D. Ala. Feb. 7, 2005) (store

manager was administratively exempt where she "directed and supervised her assistants' work,

scheduled their work, recommended the hiring and firing of employees" and "made the decisions

about what work could be delegated to assistant managers and what work she needed to do herself").

The Assistant Branch Managers who spend more than 50% of their time on such work (SOF ¶¶ 17, 23-24) automatically have exempt administrative duties as their primary duty. 29 C.F.R. § 541.206(b); 29 C.F.R.§ 541.103. To the extent that Assistant Branch Managers spent 50% or more of their time on nonexempt duties, the Court applies the same primary duty test as for the executive exemption. 29 C.F.R. § 541.206(b) ("In determining whether an employee's work meets the 'primary duty' requirement, the principles explained in § 541.103 in the discussion of 'primary duty' under the definition of 'executive' are applicable."). Thus, the above analysis of the executive exemption applies and all primary duty factors support the conclusion that Assistant Branch Managers' primary duty is exempt administrative work.

## 2. Assistant Branch Managers' Primary Duty Includes the Exercise of Discretion and Independent Judgment.

Assistant Branch Managers clearly meet the requirement that the performance of their primary duty "include[] work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2). The exercise of discretion and independent judgment requires "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). Here, many of the core Assistant Branch Manager duties, such as scheduling, training, supervising, coaching, hiring, firing, and counseling of the branch staff (*see, e.g.*, SOF ¶¶ 39-53, 57-59), inherently require the exercise of discretion. *See, e.g., Williamson*, 2009 WL 4730887, at *7 (plaintiff's authority to schedule employees and adjust their assignments based on need showed exercise of discretion); *Wilbur*, 2008 WL 3863700, at *8, *12 (coaching, training, disciplining, instructing, observing and delegating "firmly establish" discretion); *Jackson*, 362 F. Supp. 2d at 1335

- 13 -

(training, counseling and disciplining other employees; adjusting work schedules, and handling customer complaints and refunds demonstrated discretion); *Piscione v. Ernst & Young*, 171 F.3d 527, 537 (7th Cir. 1999) (plaintiff exercised discretion where he "set priorities for the other members of his team," "judged the abilities of his junior employees," and "evaluated potential employees after interviewing them and then ma[de] recommendations to hire them").  That Assistant Branch Managers' decisions may have been subject to review or even reversal does not make the administrative exemption inapplicable.  29 C.F.R. § 541.207(e); *see Kennedy v. Commw. Edison Co.*, 410 F.3d 365, 375 (7th Cir. 2005) ("The fact that a chosen action might be overruled by a supervisor says nothing about the discretion and judgment that went into its selection in the first place."); *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 867 (N.D. Tex. 2001) (proposition that "final decision-making authority is not required" applied equally to the administrative and executive exemption).

Moreover, Assistant Branch Managers' duties need only "include" work that requires the exercise of discretion and independent judgment; there is no requirement that Assistant Branch Managers exercise such discretion and independent judgment customarily or regularly.  29 C.F.R. § 541.214(a); *Blue v. Chubb Group*, No. 03 C 6692, 2005 WL 1667794, at *14 (N.D. Ill. July 13, 2005) ("The regulations do not require that [employee] constantly or even regularly exercise discretion and independent judgment to satisfy the short test for the administrative exemption. … [Employee's] work need only 'include' the exercise of discretion and independent judgment.") (internal citations omitted); *Kennedy*, 410 F.3d at 370 (applying the "include" standard); *Piscione*, 171 F.3d at 533 (same).  Here, the undisputed record evidence, including Plaintiffs' witnesses' declarations, demonstrates that, at the very least, all Assistant Branch Managers' performed work—the enforcement of Defendants' company policies—that involved

- 14 -

the exercise of discretion and independent judgment. (SOF ¶¶ 26, 66-68); *see Akaosugi v. Benihana Nat'l Corp.*, No. C 11–01272, 2012 WL 3999855, at *5 (N.D. Cal. Sept. 7, 2012) (enforcing the employer's corporate policies demonstrates a manager's discretion); *Fetrow-Fix*, 2011 WL 5827199, at *8 ("implementation of [defendant's] policies and operating practices, as well as evaluating different circumstances and deciding if action needed to be taken [were] ... the essence of exercising discretion and independent judgment.").

Thus, Assistant Branch Managers also meet the requirements of the administrative exemption because (1) their primary duty is office work directly related to Defendants' management policies or general business operations, and (2) the performance of such primary duty includes work requiring the exercise of discretion and independent judgment. Assistant Branch Managers are exempt administrative employees and Defendants are entitled to summary judgment on Plaintiffs' claim that Assistant Branch Managers were misclassified.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment on Plaintiffs' Rule 23 Misclassification Claim under the IMWL.

Dated: September 28, 2012                    Respectfully submitted,

                                             s/  Elizabeth B. McRee
                                             _____

Nigel Telman                                 Elizabeth B. McRee (6275501)
nftelman@proskauer.com                       emcree@JonesDay.com
Proskauer Rose LLP                           JONES DAY
Three First National Plaza                   77 West Wacker
70 West Madison, Suite 3800                  Chicago, IL 60601-1692
Chicago, IL 60602-4342                       Tel: (312) 782-3939
Tel: (312) 962-3550                          Fax: (312) 782-8585
Fax: (312) 962-3551

CHI-1864836v2

Mark W. Batten*
mbatten@proskauer.com
Proskauer Rose LLP
One International Place
Boston, MA 02110
Tel: (617) 526-9600
Fax: (617) 526-9899

Elise M. Bloom*
ebloom@proskauer.com
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
Tel: (212) 969-2000
Fax: (212) 969-2900

Matthew W. Lampe*
mwlampe@JonesDay.com
Wendy C. Butler*
wbutler@JonesDay.com
JONES DAY
222 East 41st Street
New York, NY 10017
Tel: (212) 326-3939
Fax: (212) 755-7306

Attorneys for Defendants

* admitted *pro hac vice*

CHI-1864836v2

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 28th day of September, 2012, a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' RULE 23 MISCLASSIFICATION CLAIM UNDER THE ILLINOIS MINIMUM WAGE LAW** was served via the Court's CM/ECF system which will send electronic notification to the attorneys of record at the e-mail addresses on file with the Court.

s/ Elizabeth B. McRee
One of the Attorneys for Defendants

CHI-1864836v2