**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SYNTHIA G. ROSS, et al.,** | ) | |
| On Behalf of Themselves and | ) | |
| All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case no.: 1:09-CV-5695 |
| | ) | |
| **RBS CITIZENS, N.A.** | ) | |
| **d/b/a CHARTER ONE** | ) | |
| -and- | ) | |
| **CITIZENS FINANCIAL GROUP, INC.** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO
THE RULE 23 ILLINOIS ASSISTANT BRANCH MANAGER
<u>MISCLASSIFICATION CLAIM UNDER THE IMWL</u>**

the law office of **DONELON, P.C.** www.donelonpc.com

Brendan J. Donelon, N.D.Ill. #43901
Daniel W. Craig, N.D.Ill. #6230845
420 Nichols Rd., Ste. 200
Kansas City, Missouri 64112
Tel:    (816) 221-7100
Fax:   (816) 709-1044
brendan@donelonpc.com
dan@donelonpc.com

Pete Winebrake, N.D.Ill.
**Winebrake & Santillo, LLC**
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Ph:  (215) 884-2491
Fx:  (215) 884-2492
pwinebrake@winebrakelaw.com

**ATTORNEYS FOR PLAINTIFFS**

**Table of Contents**

A.  Introduction…………………………………………………………………………4

B.  Summary Judgment Standards…………………………………………………………5

C.  Framework of the FLSA and its Exemptions……………………………………………..6

D.  Relationship of FLSA to IMWL………………………………………………………7

E.  The Executive Exemption………………………………………………………………..8

    1.  "Primary Duty" and "Management"……………………………………………....8

    2.  Defendants Have Failed to Prove As a Matter of Law that
        ABMs' "Primary Duty" is "Management"…………………………………………..12

        a.  ABMs spend "the major part, *or over 50%* of their time"
            performing nonexempt duties…………………………………………………12

        b.  ABMs nonexempt work is of more importance than any
            managerial work………………………………………………………….......13

        c.  ABMs rarely if ever exercise discretionary powers
            and are rarely free from supervision……………………………………………..15

        d.  ABMs' effective hourly rate of pay is only one dollar more
            than that of nonexempt tellers and bankers whose work ABMs
            primarily perform………………………………………………………………..17

    3.  ABMs Do Not "Customarily and Regularly Direct the Work of Two
        or More Other Full-Time Employees"……………………………………………18

F.  The Administrative Exemption………………………………………………………19

    1.  Defendants Have Failed to Prove As a Matter of Law that
        Illinois ABMs are Exempt Pursuant to the Administrative Exemption……………..23

G.  Conclusion………………………………………………………………………25

**Table of Cases**

*Christopher v. Smithkline Beecham Corp.*, 132 S.Ct. 2156 (2012)…………..…………….…….6

*Hall v. Sterling Park District*, 2011 WL 1748710 (N.D.Il. May 4, 2011)…..…………..…..10, 17

*In re Enterprise Rent-a-Car Wage & Hour Employment Practices Litigation*,
2012 WL 4356762 (W.D.Pa. Sept. 24, 2012)...........................................................6, 11, 17-18

*Jackson v. Go-Tane Services, Inc.*, 56 Fed.Appx. 267 (7th Cir. 2003).........................8-9, 14, 17

*Johnson v. Hix Wrecker Serv.*, 651 F.3d 658 (7th Cir. 2011)...............................................6, 17

*Martin v. Copper Elec. Supply Co.*, 940 F.2d 896 (3d Cir. 1991)...............................................7

*Maxum Indemnity Co. v. Eclipse Manuf. Co.*, 848 F.Supp.2d 871 (N.D.Il. 2012)…………..…..5

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)..............................................6

*Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560 (7th Cir. 2012)…..…………..……7, 22, 25

*Shores v. Publix Super Markets, Inc.*, 1996 WL 859985 (M.D.Fla. Nov. 25, 1996)……........16

*Sorrentino v. ASN Roosevelt Ctr., LLC*, 584 F. Supp. 2d 529 (E.D.N.Y. 2008)……..............16

*Verkuilen v. Mediabank, LLC*, 646 F.3d 979 (7th Cir. 2011)………….…………..………..…23

*Zelenika v. Comm. Edison Co.*, 2012 WL 3005375 (N.D. Ill. July 23, 2012)..................8, 20-22

**Regulations**

29 U.S.C. § 213(a)(1)……………………………………………………..……………………7

29 C.F.R. § 541.102……………………………………………………………………………9

29 C.F.R. § 541.103……………………………………………………………………....…..8

29 C.F.R. § 541.105(a)……………………………………………………..…………………18

29 C.F.R. § 541.105(d)……………………………………………………..…………………18

29 C.F.R. § 541.105(e)……………………………………………………..…………………18

29 C.F.R. § 541.201(b)……………………………………………………..…………………20

29 C.F.R. § 541.214……………………………………………………………………….19-20

A.     **Introduction:**

After three-plus years of adamant denials, Defendants finally admit in their summary judgment motion what has been plainly obvious to Plaintiffs, this Court, and the Seventh Circuit Court of Appeals: Charter One's Illinois Assistant Branch Managers ("ABMs") are similarly situated enough such that their legal overtime classification can and should be made in one determination.[1]   While Plaintiffs wholeheartedly agree with Defendants that the Illinois ABM class members are certainly similarly situated, Defendants' motion for summary judgment must nevertheless be denied.   Plaintiffs hesitate to say that there are truly "genuine" disputes of material fact because, as the Court will see, all of the legitimate evidence emanates from Plaintiffs and unmistakably demonstrates that Defendants have misclassified the ABMs as exempt.   The sworn deposition and declaration testimony of over 30 Illinois hourly employees, ABMs and branch managers, combined with Charter One's written policies and procedures (including their mid-litigation reclassification of ABMs to non-exempt banker status) establish that ABMs' *primary duty*, the true essence of the job function that they spend the vast majority of their time on, is non-exempt banker and teller work.

While numerically substantial, Defendants' statement of undisputed facts is devoid of undisputed factual *evidence* that establishes as a matter of law that ABMs are properly classified as exempt.   Defendants' evidence amounts to mischaracterized excerpts from ABM testimony and a handful of declarations that are much too vague to support summary judgment, as they fail to establish the amount of time ABMs spend on "management" or "operation of the business" functions, fail to establish that such duties are the ABMs' primary duty, and most importantly fail to explain away the substantial evidentiary record offered by Plaintiffs.

---

[1] Of course this still requires the Court and Plaintiffs to simultaneously entertain an alternate parallel reality where Defendants continue to maintain ABMs are "too different" to make this determination.  *See*, Defendants' Motion to Decertify Illinois Classes and Memo in Support, Docs. 354, 356.

If Defendants' declarations and distorted deposition excerpts are accepted at face value along with Plaintiffs' evidentiary record, at best they simply create disputes of fact as to what the true primary duty of a Charter One ABM is, a determination a jury must ultimately make. Because a reasonable jury could certainly find that Defendants have failed to meet their burden as to at least one element of each alleged exemption, summary judgment should be denied.

**B.    Summary Judgment Standard:**

"Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.  Fed.R.Civ.P. 56(c) & advisory committee's notes.  The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In response, the nonmoving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial.  *Id*. at 324, 106 S.Ct. 2548; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).  A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at 598-99.  Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d  202 (1986)."  *Maxum Indemnity Co. v. Eclipse Manuf. Co.,* 848 F.Supp.2d 871, 879-880 (N.D.Il. 2012) (J. Lefkow).

In reviewing the record, the court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe," and therefore only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). As is the case here, "[a] party opposing summary judgment does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance." *Johnson v. Hix Wrecker Serv.*, 651 F.3d 658, 662 (7th Cir. 2011), *citing Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir. 1992) (explaining that when the moving party has the burden of proof on an issue it must show that the evidence on that issue is so one-sided that it must prevail as a matter of law).

When predicated upon an exemption to the overtime pay requirements of the FLSA and IMWL, "[i]n order for summary judgment to be granted, [Defendants] must establish all the essential elements of the exemption to the extent required by the summary judgment standard discussed above. If a reasonable jury could find that [Defendants] did not meet its burden with respect to just one element of the relevant exemption, it would be compelled to return a verdict in favor of [Plaintiffs] as to the exemption. As such, summary judgment is inappropriate here unless there are no genuine issues as to material facts with respect to *any* of the elements of the exemption." *In re Enterprise Rent-a-Car Wage & Hour Employment Practices Litigation*, 2012 WL 4356762, at *11 (W.D.Pa. Sept. 24, 2012) (emphasis in original).

## C.    Framework of the FLSA and its Exemptions:

"Congress enacted the FLSA in 1938 with the goal of 'protecting all covered workers from substandard wages and oppressive working hours.'" *Christopher v. Smithkline Beecham*

*Corp.*, 132 S.Ct. 2156, 2162 (2012). "Under the FLSA, employees are entitled to overtime pay (i.e., one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act. 29 U.S.C. §§ 207, 213. Under the statute's express delegation of rule-making authority, the Secretary has issued, after notice-and-comment procedures, detailed regulations that define each of the exemptions in 213(a)(1). *See* 29 U.S.C. § 213(a)(1) (providing authority)." *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571-572 (7th Cir. 2012).

The exemption applicable to Defendants' motion for summary judgment here is one that exempts from the overtime pay requirement "any employee employed in a bona fide executive, administrative or professional capacity." 29 U.S.C. § 213(a)(1). "The burden is on the employer to establish that an employee is covered by the exemption. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). As a remedial statute, the exemptions are narrowly drawn against the employers, *Johnson v. Hix Wrecker Serv.*, 651 F.3d 658, 660 (7th Cir. 2011), and 'limited to those establishments plainly and unmistakably within their terms and spirit.' *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). This approach ensures that we remain faithful to the plain wording of the statutory language as a whole and, consequently, to the intent of Congress. *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 508 (7th Cir. 2007)." *Schaefer-LaRose*, 679 F.3d at 571. Ultimately, "if the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden." *Martin v. Copper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991).

**D.     Relationship of FLSA to IMWL:**

Plaintiffs' Rule 23 claims of misclassification in this case are brought solely under the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1 *et seq.* "The IMWL applies the

administrative and executive exemptions 'as defined by or covered by the Federal Fair Labor Standards Act of 1938 and the rules adopted under that Act, *as both exist on March 30, 2003*.' 820 ILCS 105/4a(2)(E). Thus, Plaintiffs' state overtime claim is governed by the FLSA regulations that existed prior to the comprehensive amendments of April 23, 2004, which altered the definition of individuals 'employed in a bona fide executive, administrative, or professional capacity.'" *Zelenika v. Commonwealth Edison Co.*, 2012 WL 3005375, *14 (N.D. Ill. July 23, 2012) (emphasis in original).

### E. The Executive Exemption:

"Under the FLSA, an employer may demonstrate that the 'executive' exemption applies by satisfying either a six-part test ('long test') specified in 29 C.F.R. § 541.1, or a three-part test ('short test') detailed in 29 C.F.R. § 541.1(f). Where, as here, it is undisputed that the employee in question earns more than $250 per week, the short test applies. *See* 29 C.F.R. § 541.1(f). Under the short test, [Defendant] must prove that: (1) plaintiff is paid on a salary basis; (2) plaintiff's *primary duty* consists of the management of the employer's enterprise, and (3) plaintiff's job duties require him to customarily and regularly direct the work of two or more other full-time employees. *Id.*" *Jackson v. Go-Tane Services, Inc.*, 56 Fed.Appx. 267, 270 (7th Cir. 2003) (emphasis in original).

### 1. "Primary Duty" and "Management."

"When determining whether any employee qualifies as a bona fide 'executive' under the FLSA, a court must review whether an employee's 'primary duty' is management. The 'primary duty' determination must be made on a case-by-case basis, 29 C.F.R. § 541.103, but 'it may be taken as a good rule of thumb that primary duty means the major part, or *over 50 percent* of the employee's time.' *Id.*" *Jackson*, 56 Fed.Appx. at 271 (emphasis in original). "Other factors that

may be considered in the 'primary duty' analysis include: (1) the relative importance of the managerial duties as compared to other types of duties; (2) the frequency with which the employee exercises discretionary powers, (3) the employee's relative freedom from supervision; and (4) the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor." Id.

As for what constitutes "management" for which Charter One must prove is the "primary duty" of ABMs, the FLSA provides several specific examples of what can be considered "exempt work":

- Interviewing, selecting, and training employees;
- Setting and adjusting their rates of pay and hours of work;
- Directing their work;
- Maintaining their production or sales records for use in supervision or control;
- Appraising their productivity and efficiency for the purpose of recommending promotion or other changes in their status;
- Handling their complaints and grievances and disciplining them when necessary;
- Planning the work;
- Determining the techniques to be used;
- Apportioning the work among the workers;
- Determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold;
- Controlling the flow and distribution of materials or merchandise and supplies; and,
- Providing for the safety of the men and the property.

See 29 C.F.R. § 541.102 (Management).

In Jackson, supra, the Seventh Circuit affirmed the district court's finding that the plaintiff had been misclassified as exempt pursuant to the executive exemption. The plaintiff there was the "manager" of defendant's car wash. The evidence demonstrated that the plaintiff performed job duties that included handling customer complaints and scheduling and training of employees. However, the evidence also established that in reality, although the defendant had conferred the title of "manager" on plaintiff, defendant "entrusted [plaintiff] with very few responsibilities and had him operate as a glorified Car Wash attendant." Most importantly, the

appellate court found that "there was unrefuted evidence that such mundane [non-exempt] tasks comprised *well over 50%* of [plaintiff's] work hours." Id. at 271. (emphasis in original). The appellate court noted that the defendant was unable to credibly estimate how much time the plaintiff spent on non-exempt versus exempt job duties, defendant could not produce any documents that would help determine such time allocation, and defendant could not establish that any managerial responsibilities that the plaintiff did have "were overwhelmingly important compared to the [non-exempt] tasks that [plaintiff] performed." Id.

Finally, citing the district court's findings, the appellate court observed that "while [defendant's supervisor] *tried to give the impression* that [plaintiff] had great independent authority, the documents and other testimony concerning hiring and firing, and granting raises clearly show that [plaintiff] had to clear any such action with [defendant's supervisor]." Id. at 271. (emphasis in original). Applying the standards discussed above, the appellate court affirmed the district court's determination that the plaintiff's primary duty "was *not* management" and therefore the defendant failed to prove that the plaintiff was exempt pursuant to the executive exemption. Id. at 272. (emphasis in original).

Conversely, in *Hall v. Sterling Park District*, 2011 WL 1748710 (N.D.Il. May 4, 2011), the district court determined that the plaintiff there, a "Director of Golf Operations," was exempt pursuant to the executive exemption. The undisputed facts established that the plaintiff was directly responsible ("Plaintiff was in charge") for management and operation of the defendant's golf course and affiliated clubhouse, restaurant, and banquet facilities; he directly or indirectly (through direct reports) supervised up to 30 people at various times; he managed the golf course's budget; he had responsibility for making decisions related to interviewing, hiring, firing, discipline, and salaries of the employees; and his annual salary exceeded "by more than $30,000"

any other employee at the golf course. Because of these undisputed facts, and despite the plaintiff claiming that 75-80% of his time was spent on non-exempt manual labor, the court found that "the totality of the circumstances indicate that Plaintiff was appropriately categorized as an [executive] exempt employee." Id. at *4-5. In finding the plaintiff exempt under the executive exemption, the court concluded "[i]n sum, undisputed facts show that Plaintiff was in a position of relative importance, was regularly involved in budgetary and personnel decisions, did not have a direct supervisor on-site at [plaintiff's work site], and was salaried at a rate significantly higher than his subordinates." Id. at *6.

Finally, in In re Enterprise, supra, the defendant sought summary judgment against its "assistant managers" who work at their numerous car rental branches pursuant to the administrative and executive exemptions. The district court denied summary judgment, finding that the defendant had "failed to satisfy its burden of proving as a matter of law that [plaintiff] was properly classified as exempt as an assistant manager." 2012 WL 4356762 at *1. In reviewing the record, the court found that the operation of defendant's branches were largely governed by highly detailed policies; that assistant managers spent significant time performing nonexempt functions such as writing tickets and renting, cleaning, and moving vehicles; and that any important decisions at the branches were made by the branch manager. On the other hand, the record included evidence that assistant managers gave recommendations with respect to personnel matters that were given due consideration and weight; that they supervised employees; and that there were periods of time when the branch managers were absent from the branch, leaving them with the highest job title. Id. at *2-5.

In applying the standards discussed in Sections B and C above to the evidentiary record before it, the district court held that "a jury could reasonably determine that [plaintiff's] limited

exempt duties were much less important than his nonexempt duties." Id. at *13. The court predicated this finding on the fact that "[t]hose labor-intensive and inside-sales tasks (which are nonexempt) were vital to the success of [plaintiff's] branch, whereas [plaintiff's] testimony, which must be viewed in his favor, establishes that his role as a supervisor or a trainer was not as important – the employees were self-sufficient and capable of doing their jobs without any meaningful oversight. Employees' job responsibilities were controlled by company or branch policies that [plaintiff] did not create." Id. The court further found that the majority of the assistant managers' time was spent on "nonexempt tasks such as working at the rental counter" and that the assistant managers were required to defer to the supervision of the branch managers who were usually present. Thus, the court determined that the defendant had failed to clearly prove that "management" was the "primary duty" of assistant managers. Id. at *13-14.

## 2. Defendants Have Failed to Prove As a Matter of Law that ABMs' "Primary Duty" is "Management."

Defendants have failed to prove as a matter of law (and that the evidence is so one-sided in their favor) that the "primary duty" of Illinois ABMs is "management." While failing to establish just one of the necessary exemption elements dooms their motion, *In re Enterprise*, 2012 WL 4356762, at *11, Defendants have failed to establish any of them.

### a. ABMs spend "the major part, or *over 50 percent* of their time" performing nonexempt duties.

Plaintiffs' evidence based upon declaration and deposition testimony of twenty-eight (28) Illinois ABMs, is that on average, ABMs spend approximately *80%* of their time performing nonexempt teller and banker related duties. (Pltfs. SOFs, ¶¶ 8-9).[2] Defendants offer nothing to

---

[2] This testimony is corroborated by the testimony of several hourly employees who confirm that management functions (interviewing, scheduling, coaching, evaluating, etc.) are performed by branch managers, not ABMs (Pltfs. SOFs, ¶¶ 10-16), and two branch managers who testified that ABMs spend "the vast majority" and "80%" of their time performing nonexempt teller and banker duties. (Pltfs. Ex. Q, Marks dec., ¶ 11, Ehmen dec., ¶ 25).

directly contradict this evidence. Defendants offer no testimony from other ABMs to contradict this evidence or to offer alternative estimates.[3] Defendants offer no documentary evidence that establishes what percentage of time ABMs spend on nonexempt versus exempt duties. Rather, Defendants merely offer declarations from three (3) current branch managers who did not provide estimates in their 2010 declarations (Defs. Exs. 53, 56, 58), but who now estimate that their ABMs spend their time performing management duties in the following percentages: 35%, 50%, and 55-65% (Defs. Exs. 4, 9, 10, respectively). Such evidence hardly supports Defendants' contention that "[n]umerous Assistant Branch Managers spend more than 50% of their time on exempt managerial duties," (Defs. Memo, pg.6) and fails to establish an undisputed fact in Defendants' favor. While not the only factor to consider, "it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent of the employee's time." *Jackson*, 56 Fed.Appx. at 271. On this point, it can be reasonably concluded that the "primary duty" of ABMs is nonexempt work.[4]

### b. ABMs' nonexempt work is of more importance than any managerial work.

Given that 80% of the ABMs' time is spent performing nonexempt work, it is reasonable to conclude that such work is of more importance than any managerial tasks they rarely if ever perform. This conclusion is buttressed by the testimony from several hourly employees who confirm that when it comes to supervision, evaluation, direction and other managerial type duties, the ABMs' involvement is simply non-existent or nominal at best. (Pltfs. SOFs, ¶¶ 10-16). The ABMs themselves describe the importance of their job and that of their fellow ABMs to be banker (primarily sales) and teller work. (Pltfs. SOFs, ¶¶ 17-20). ABMs expressed

---

[3] In contrast to Plaintiffs' 28 declarants (Pltfs. SOFs, ¶8), none of Defendants' 7 ABM declarants provide estimates of how much time is spent on nonexempt versus exempt duties. (Defs. Exs., 11-15, 17-18).
[4] As for the examples of exempt management work provided in § 541.102, *supra* at pg.9, the testimony from over 30 hourly employees, ABMs, and branch managers demonstrates that ABMs have little to no involvement with such duties. (Pltfs. SOFs, ¶¶ 8-21).

common sentiments such as "I don't feel like I effectively managed. I feel like I was a majority of the time a banker, a majority of the time a teller," and "you were running a drawer. And you were cross-selling customers over the line and sitting them down. I mean, most of your time was spent selling," and "my job was sales, and that's what I did. I was concerned more with getting the sales and making calls." (Id.). Although Defendants confer the title of "manager" on ABMs, in reality they function as "glorified" tellers and bankers. (Id.); *Jackson*, 56 Fed.Appx. at 271.

In contrast to Plaintiffs' evidentiary record, Defendants' argument that ABMs' managerial work is more important than their nonexempt work is unsupported by evidence. Defendants contend the ABM position was "structured" so that managerial work was "the most important facet of the job" (Defs. Memo, pg.7), yet the evidentiary foundation for that claim is merely a conclusory statement of a corporate representative who admits that Defendants really do not know what ABMs do on a daily basis. (Pltfs. Resp. to Defs. SOFs, ¶¶ 11, 14-15). Defendants argue that the importance of the ABMs' managerial work is reflected by the decrease in sales goals and the "substantial" increase in salary ABMs get compared to their previous nonexempt positions. (Defs. Memo, pgs.7-8). However, at best these are facts in dispute as ABMs have testified[5] that their sales goals *increased* when they moved from nonexempt positions to ABM, and Plaintiffs' evidence establishes that on average ABMs earn about one dollar an hour more than nonexempt employees. (Pltfs. Resp. to Defs. SOFs, ¶¶ 7-8).

The fact that ABMs' managerial work is not of particular importance compared to their nonexempt work is illustrated by the complete lack of documentary evidence produced by Defendants in support of their argument. *See e.g., Jackson*, 56 Fed.Appx. at 271 (in finding

---

[5] For example, ABM Robertson testified that as an ABM "I was still doing everything I did as a personal banker….Basically, just had more, higher sales goals expected." (Pltfs. Ex. N, at 95:7-15). When asked how her responsibilities "changed" when she moved from banker to the ABM position, ABM Sparger testified "they were the same except for more sales." (Pltfs. Ex. P, at 77:23 to 78:6). Defendants' corporate representative also admitted that ABMs have higher sales goals than branch managers. (Pltfs. Ex. G, at 149:8-12).

plaintiff misclassified as to executive exemption, appellate court pointed to Defendant's inability to produce any documents that would show managerial duties were "overwhelmingly important" compared to nonexempt duties.). Given that the Illinois classes in this case involve 288 ABMs and 1679 hourly employees[6] going back to October 2007[7], if ABMs' managerial work was so truly important as Defendants maintain, one would expect there to be literally *thousands* of documents evidencing ABMs interviewing, selecting, disciplining, training, and evaluating employees. Yet, Defendants have failed to come forward with such documentary evidence.

> ### c. ABMs rarely if ever exercise discretionary powers and are rarely free from supervision.

Like the unsuccessful defendant before the appellate court in *Jackson*, Defendants here have "*tried to give the impression* that [ABMs] had great independent authority, [however] the documents and other testimony concerning hiring and firing, and granting raises clearly show that [ABMs] had to clear any such action with [their supervisors]." In *Jackson*, such facts led the Seventh Circuit to conclude that the plaintiff's primary duty "was *not* management." Id. at 271-272 (emphasis in original). For sure, Defendants here claim that ABMs "regularly" exercise independent discretion and are relatively free from supervision (Defs. Memo, pgs. 8-10), but the evidence simply does not support this contention or at best creates factual disputes.

For example, Defendants' "performance expectations" for ABMs describe a primarily nonexempt job, one that is almost identical to the expectations for bankers. (Pltfs. SOFs, ¶¶ 1-2). Defendants' "core competencies" for ABMs describe attributes that are almost equally applicable to nonexempt positions. (Pltfs. SOFs, ¶3). The fact that ABMs perform teller and banker duties 80% of the time establishes they do primarily nonexempt work, but also

---

[6] *See* Doc. #325, Plaintiffs' Notice of Withdrawal Forms From Rule 23 Class Members, stating class member numbers.
[7] See Doc. #200, October 8, 2010 Order Granting Rule 23 Class Certification, back three years.

establishes that ABMs have practically no independent discretion, as Defendants' "colleague performance standards" demonstrate how every aspect of a teller or banker's job is governed by mandatory non-discretionary policies and laws. (Pltfs. SOFs, ¶ 4). Defendants' "policy exception grid" confirms the narrow limits of discretion ABMs have. Discretion that is much more akin to that of nonexempt employees than upper management. (Pltfs. SOFs, ¶¶ 5-6).

Additionally, the testimony of over 30 hourly employees and ABMs demonstrates that "discretionary" related decisions are made by the branch manager. Time and again when Defendants' counsel asked hourly employees "who" interviewed them, hired them, supervised them, reviewed their timesheets, trained them, scheduled them, and evaluated them, they uniformly answered "the branch manager." (Pltfs. SOFs, ¶¶ 10-16). When they were asked the follow-up question of whether the ABMs ever performed these tasks, they uniformly answered "no." (Id.). The ABMs themselves confirmed that they have little or no involvement with interviewing, hiring, firing, disciplining, training, coaching, scheduling, evaluating, or supervising employees. They confirmed that they have no independent authority to make decisions with respect to these issues, they don't assume the authority of the branch manager in his or her absence, and they are always being directly supervised. (Id. at ¶¶ 17-21).

In response to this testimonial and documentary record, Defendants offer a small handful of ABM and branch manager declarations that are suspect in their veracity[8] and simply too vague

---

[8] Employer-obtained declarations from "happy camper" current employees are disregarded for obvious reasons. *See e.g., Sorrentino v. ASN Roosevelt Ctr., LLC*, 584 F. Supp. 2d 529, 533 (E.D.N.Y. 2008) ("If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive."); *Shores v. Publix Super Markets, Inc.*, 1996 WL 859985, *3 (M.D.Fla. Nov. 25, 1996) (unlike information "that employees may review and analyze in the privacy of their own home, [an employer's] communications are disseminated at the workplace, by the very managers accused of propagating [the illegal] practices"). Moreover, given that *all* of Defendants' 7 ABM declarants have chosen to *remain* plaintiffs in this action despite disavowing any interest in their 2010 declarations drafted by Defendants places the accuracy of their testimony in legitimate doubt (Pltfs. Resp. to Defs. SOFs, ¶ 17), particularly as that testimony is in such contrast to that of the 28 other ABMs and the 6 Hourly employees who provided testimony regarding the job duties of ABMs. (Pltfs. SOFs, ¶¶ 10-21).

to support Defendants' exemption claim as a matter of law, given that they are simply not specific enough in terms of establishing that the ABMs' primary duty is exempt work. *See*, *e.g.*, *Johnson v. Hix Wrecker Service, Inc.*, 651 F.3d 658, 662-663 (7th Cir. 2011) (appellate court reversed summary judgment in favor of employer as to FLSA exemption because employer's affidavit in support was "simply too vague" for the court to determine as a matter of law that employee was exempt.).

As reflected by the record, in reality the ABMs' factual circumstances here are substantially similar to those of the "managers" in *Jackson*, *supra* at 271-272, where the appellate court found the plaintiff misclassified because his nonexempt work "comprised well over 50%" of his time and because he had to defer to his supervisor when it came to any type of discretionary issue, and in *In re Enterprise*, *supra* at *13-14, where the court denied defendant's motion for summary judgment as to the executive exemption because, although the assistant managers performed *some* managerial duties, it was their nonexempt work that was "vital" to defendants' business; because the branch hourly employees' job duties were tightly governed by defendant's policies and thus did not require meaningful supervision; and because the assistant managers were required to ultimately defer to the supervision of the branch managers, who were usually present. In contrast, the ABMs factual circumstances here have absolutely no resemblance to those of the plaintiff found exempt under the executive exemption in *Hall*, *supra* at *6, where the evidence demonstrated that managing the business was plaintiff's most important job function; he was regularly involved in budgetary and personnel decisions; he had no on-site supervisor; and he was salaried at a rate "significantly higher" than his subordinates.

**d. ABMs' effective hourly rate of pay is only one dollar more than that of nonexempt tellers and bankers whose work ABMs primarily perform.**

When ABMs' yearly salary is broken down to an hourly rate, they earn $14.97 an hour, or one dollar more than their nonexempt co-employees who earn $13.97 an hour. (Pltfs. Resp. to Defs. SOFs, ¶¶ 7-8). Such a meager differential between an hourly employee and a "management" employee hardly supports Defendants' arguments of executive exemption. *See e.g.*, *Hall, supra*, at *4-5 (one factor in finding plaintiff exempt was fact that his salary exceeded "by more than $30,000" any other co-employee).

**3. ABMs Do Not "Customarily and Regularly Direct the Work of Two or More Other Full-Time Employees."**

As the FLSA states, "[a]n employee will qualify as an 'executive' under § 541.1 only if he customarily and regularly supervises at least two full-time employees or the equivalent." *See* 29 C.F.R. § 541.105(a). The regulations further state:

> A small department in a plant or in an office is usually supervised by one person. Any attempt to classify one of the other workers in the department as an executive merely by giving him an honorific title such as assistant supervisor will almost inevitably fail as there will not be sufficient true supervisory or other managerial work to keep two persons occupied.

*See* 29 C.F.R. § 541.105(d).

> An employee who merely assists the manager or buyer of a particular department and supervises two or more employees only in the actual manager's or buyer's absence, however, does not meet this [exempt] requirement …. A shared responsibility for the supervision of the same two or more employees in the same department does not satisfy the requirement that the employee 'customarily and regularly directs the work of two or more employees therein.'

*See* 29 C.F.R. § 541.105(e).

In *In re Enterprise*, *supra*, at *15, the court determined that the defendant had failed to prove as a matter of law that assistant managers customarily and regularly directed the work of two or more full time employees because the record demonstrated that branch managers were responsible for directing the hourly employees, setting policies, and setting the work schedules.

Applying the regulations discussed above, the court held that "[a] reasonable jury could conclude that [plaintiff] only supervised other employees in the branch when the branch manager was not present, based on the testimony that the branch manager oversaw all but the most mundane decisions, and that [plaintiff] relied on the branch manager to make important decisions not dictated by policy, which included calling the branch manager during the evening shift if a difficult situation arose."

The exact same conclusion can be reached here. Defendants' "FTE Models" and their handful of vague declarations to the contrary, the evidentiary record demonstrates that branch managers (and in their absence regional managers or HR) are truly responsible for directing and supervising the employees, setting policies and setting the work schedules. Corporate policies dictate almost every aspect of branch conduct, and branch managers oversee all but the most mundane of decisions. ABMs have no real supervision over employees and at best have very limited oversight responsibility only in the branch manager's absence. ABMs and the hourly employees rely on the branch managers to make all of the few yet important decisions not dictated by policy. (Pltfs. SOFs ¶¶ 1-21). As the regulations state with respect to a small "branch-type" setting, merely giving employees "an honorific title such as assistant supervisor will almost inevitably fail as there will not be sufficient true supervisory or other managerial work." *See* C.F.R. § 541.105(d). The record demonstrates here that Defendants' bestowal of the honorific title of "assistant manager" has failed as well. (Id.).

### F. The Administrative Exemption:

Defendants seek summary judgment based upon the pre-2004 "short test" for determining if an employee is administratively exempt. "Prior to the 2004 amendments, all employees 'compensated on a salary or fee basis at a rate of not less than $250 per week,' or $13,000 per

year, were subject to the short test, which mirrored the general test in the present regulations: employers had to establish compensation on a salaried basis, primary duties of non-manual work [directly] related to management or general business operations, *and* primary duties involving the exercise of discretion and independent judgment. 29 C.F.R. § 541.214 (2003)." *Zelenika*, 2012 WL 3005375, at *14. (emphasis in original).

"The regulations define 'directly related to the management or general business operations' as work that is 'directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.' 29 C.F.R. § 541.201(a)." *Zelenika*, 2012 WL 3005375, at *13. "The concept of a 'production worker' is not limited to individuals involved in the manufacture of tangibles." *In re Enterprise*, 2012 WL 4356762, at *17. The regulations also provide specific examples of what would constitute work directly related to the general business operations: "tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network; internet and database administration; legal and regulatory compliance." 29 C.F.R. § 541.201(b).

In *Zelenika*, *supra*, the court found this standard to be met because the employees at issue ("Senior Distribution System Dispatchers") were primarily responsible for "monitoring and responding to problems with [defendant's] electrical distribution system." They were not producing anything and they were not directly selling to or servicing clients. Rather, they were making sure that the business *itself* was running properly. This was further supported by the fact that the employees were responsible for "quality control and personnel management," specific

administrative tasks identified in the regulations. 29 C.F.R. § 541.201(b). Thus the court concluded that "Plaintiffs' primary duties as Dispatchers were related to [defendant's] general business operations." Since the Plaintiffs there were "highly compensated employees" (an issue not presented here), the court was not required to consider whether their duties involved the "exercise of discretion and independent judgment with respect to matters of significance" and therefore granted summary judgment with respect to the plaintiffs' FLSA claim. Id. at *13.

However, in considering the administrative exemption as it related to the plaintiffs' IMWL claim, the *Zelenika* court correctly observed that it was required (as the Court is here) to further determine "whether Plaintiffs' primary duties involved the exercise of discretion and independent judgment." Id. at *14-15. The court observed that this requirement consists of examination of two distinct elements that defendants must prove: that the plaintiffs have (1) "primary duties" that call for (2) the "exercise of discretion and independent judgment":

> To qualify for the administrative exemption, [defendant] must also show that Plaintiffs' duties calling for the exercise of discretion and independent judgment were Plaintiffs' primary duties. *Generally, 'primary duty' means 'the major part, or over 50 percent, of the employee's time.'* 29 C.F.R. § 541.103 (2003). But the court considers several other factors even where employees fall below this threshold, including 'the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, [and] his relative freedom from supervision.' *Id.* Although the totality of plaintiff's duties are relevant … *[t]he employee's primary duty 'is that which is of principal importance to the employer,* rather than collateral tasks which may take up more than fifty percent of his or her time.'
>
> The 2003 regulations interpreted the exercise of discretion and independent judgment to involve 'the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered.' 29 C.F.R. § 541.207(a) (2003). Though the short test did not specify that the exercise of discretion and independent judgment had to be with respect to significant matters, the regulations interpreting that term explained that *'the discretion and independent judgment exercised must be real and substantial,* that is, they must be exercised with respect to matters of consequence.' *Id.* § 541.207(d)(1) …. In particular, the regulations explained that '[a]n employee who merely applies his knowledge in following prescribed procedures or determining which procedure to

follow … is not exercising discretion and independent judgment within the meaning of § 541.2.' *Id.* § 541.207(c)(1) …. Moreover, the term 'implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.' *Id.* § 541.207(a).

*Zelenika*, 2012 WL 3005375 at *15 (*citing, Demos v. City of Indianapolis*, 302 F.3d 698, 704-05 (7th Cir. 2002)) (emphasis added).

The court in *Zelenika* applied the standards above to the parties' competing motions for summary judgment. Viewing the evidence in the light most favorable to the defendant (as to plaintiffs' motion), the court found that plaintiffs were required to create work routines for other employees in emergency situations, that the formal written job description "is replete with references to judgment and discretion," and that plaintiffs "are extensively trained … before allowed to assume their responsibilities on their own." Id. at *16. Conversely, viewing the evidenced in the light most favorable to the plaintiffs (as to defendant's motion), the court found that defendant stressed the importance of following set and established procedures, that plaintiffs had no real authority to deviate from such procedures, and that the plaintiffs did not exercise discretion as to personnel matters, such as staffing. Id. After reviewing this record, the court concluded "that there are issues of material fact that preclude summary judgment for either side on the IMWL claim." Id. at *15.

In *Schaefer-LaRose*, *supra*, in finding that pharmaceutical sales representatives were properly classified as administratively exempt, the Seventh Circuit determined that the reps' primary duty was work directly related to the general business operations of the defendants, because "[t]he representatives neither produce the employers' products nor generate specific sales, but service the production and sales aspects of the business by communicating the employers' message to physicians." *Schaefer-LaRose*, 679 F.3d at 576-577. The court further determined that this primary duty included the exercise of discretion and independent judgment

- 22 -

because the reps had "minimal supervision" over when and how they would meet with physicians (whom they met with alone and away from the employer's place of business) and had discretion to tailor their messages to whatever extent necessary to obtain success. Id. at 581.

In *Verkuilen v. Mediabank, LLC*, 646 F.3d 979 (7th Cir. 2011), the appellate court determined that the plaintiff there was a "picture perfect example" of an employee properly classified as exempt under the administrative exemption. A picture perfect example that Charter One ABMs share not even a passing resemblance to. The employee at issue there was an account manager for a company that sold computer software to advertising agencies. Not just any software, but software that "is complex because it integrates so many functions, and it must be customized to the needs of each client, which vary. The complexity and variance are where the account manager comes in." Id. at 982. The appellate court further noted that "[a]s the intermediary between employees of advertising agencies struggling to master complex software and the software developers at [Defendant], [Plaintiff] has to spend much of her time on customers' premises training staff in the use of the software, answering questions when she can and when she can't taking them back to [Defendant's] software developers, and then explaining their answers to the customer and showing the customer how to implement the answers in its MediaBank software." Based upon these job duties, the appellate court determined that the employee's "primary duty was directly related to the general business operations both of her employer and (as in a consulting role) of the employer's customers," and was therefore properly classified as exempt under the administrative exemption. Id. at 982-983.

1.    **Defendants Have Failed to Prove As a Matter of Law that Illinois ABMs are Exempt Pursuant to the Administrative Exemption.**

Defendants' argument here is predicated upon the same evidence and reasoning that was employed in support of the executive exemption. Defendants rely on the same handful of

questionable and vague declarations and make the same unsubstantiated claim that ABMs are significantly involved in scheduling, training, supervising, coaching, hiring and firing of employees, and thus such duties require independent discretion and amount to work related to Defendants' general business operations. (Defs. Memo, pgs. 11-15).

Defendants' argument fails here for the same reason it fails above. That is, the evidence demonstrates (or at least creates genuine disputes of material fact) that ABMs simply do not exercise discretion and independent judgment as a primary duty. (Pltfs. SOFs, ¶¶10-21). Defendants' argument additionally and specifically fails here because they simply cannot establish that ABMs' primary duties are directly related to Defendants' general business operations. § 541.214. Almost none of the examples of work that would constitute work directly related to the general business operations could even remotely apply. *See*, § 541.201(b). There is no evidence at all that ABMs have any involvement in tax, finance, accounting, budgeting, auditing, insurance, purchasing, procurement, advertising, marketing research, employee benefits, labor relations, public relations, government relations, computer network, internet and database administration, or legal compliance. Anything ABMs may even possibly have some limited or tangential involvement with (*e.g.*, safety, personnel management, human resources, regulatory compliance) is either also a nonexempt function or is one performed so nominally or under such close supervision or governed by policy, that it does not come close to equating with exercising discretion and independent judgment. *See Zelenika*, 2012 WL 3005375, at *15 ("In particular, the regulations explained that '[a]n employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow … is not exercising discretion and independent judgment within the meaning of § 541.2.'") (Pltfs. SOFs, ¶¶1-21).

As the Seventh Circuit observed in *Schaefer-LaRose*, *supra* at 574, "when an employee is engaged in the core function of a business, his or her task is not properly categorized as administrative." The "core business" of Charter One's retail bank branches is selling and providing banking products and services to their customers, the very task that ABMs, tellers and bankers spend their entire workdays performing, entirely on Defendants' premises. (Pltfs. SOFs, ¶¶10-21). In other words, ABMs do not service the business itself (by advising management, negotiating, purchasing, etc.), but rather they service the business's customers by selling banking products and services to them. Such tasks are simply not close to being administratively exempt. *See, e.g. In re Enterprise*, 2012 WL 4356762, at *19 ("Inside sales tasks and physical tasks are not within the ambit of the administrative exemption."). Moreover, ABMs' factual circumstances are clearly unlike those of the employees found to be administratively exempt by the Seventh Circuit in *Schaefer-LaRose* and *Verkuilen*, *supra*. (Pltfs. SOFs, ¶¶8-21).

### G. Conclusion.

Defendants ultimately shoulder the burden of proof under the applicable summary judgment and FLSA/IMWL exemption standards to establish as a matter of law that their ABMs are exempt. To succeed, Defendants must prove to this Court that the evidence is so undisputed and so one-sided in their favor as to each and every requirement of the exemption, that summary judgment must be entered. It is readily apparent that Defendants have failed in this regard.

**WHEREFORE**, the Plaintiffs respectfully request the Court to issue an order denying Defendants' motion for summary judgment.

*/s/ Daniel W. Craig*
Attorney for Plaintiffs

### Certificate of Service

Plaintiff hereby certifies that on October 31, 2012 a copy of this pleading was sent to counsel for Defendants via the Court's CM/ECF system according to the Rules of this Court.